HEMPSTEAD *against* REED:

IN ERROR.

A certificate of discharge under an act of a state legislature, which discharges a debtor, on his surrendering his property for the benefit of his creditors. from all his debts previously contracted, is a good defence to an action brought for the recovery of such a debt, where it was contracted in, and between citizens of, the state, under whose law the certificate was obtained.

And a certificate of discharge, legally obtained under a valid act of one state, is available as a discharge in any other state.

In regard to questions on the construction of the constitution of the *United States,* conflicting decisions in the national and state courts are to be deeply deplored, and if a harmonious concurrence of opinions is otherwise unattainable, it is no improper condescension in the state tribunals to *yield* to the supreme tribu-nal of the nation.

The laws of another state in the Union, are, in this state, deemed foreign laws,

and must be proved as facts; the courts in this state not being competent judicially to take notice of them, or of proceedings under them.

Where foreign laws and the proceedings under them, are to constitute a part of the defence set up in a special plea, both must be set out with at least certainty to a common intent.

Therefore, where the defendant in an action on a promissory note, pleaded a certificate of discharge under an insolvent law of the state of *New-York,* counted upon as "an act for giving relief in cases of insolvency;" and from the certificate of discharge, recited in the plea, it appeared, that the proceedings were had, and the discharge allowed, by virtue of an act of the legislature of that state, entitled "an act giving relief in cases of insolvency, *and the acts amending the same;*" but the plea did not state what acts of amendment existed and if any, what provisions they contained; nor were they counted upon, or referred to, except as in the certificate; it was held, that such plea was fatally defective.

*New-London,*
July,
1827.

Hempstead
*v.*
Reed.

This was an action of *assumpsit* on a promissory note, made by *Hempstead,* on the 5th of *September,* 1818, for 1361 dollars, 62 cents, payable to *Stephen Chandler,* or order, ten months after date, and by him indorsed to *Reed,* the plaintiff.

To the declaration the defendant pleaded a discharge under an act of the legislature of the state of *New-York.* The plea averred, that at the time when the act was passed, when the note was made and negotiated, and when the defendant obtained the discharge pleaded, and until 1821, the plaintiff, the defendant and *Stephen Chandler,* were, and during all the intervening time had been, inhabitants of the state of *New-York,* living and residing in the city of *New-York;* and that the note was made and indorsed in that city. The plea further stated, that previous to the date of the note, *viz.* on the 12th of *April,* 1813, the legislature of said state, passed a certain law, entitled "An Act for giving relief in cases of insolvency;" which law, from the date of its enactment, until and after the 8th of *November,* 1820, was in full force; in and by which law, among other things, it was enacted, That it shall be lawful for any debtor, who now is, or shall become insolvent, in conjunction with so many of his creditors residing in the *United States,* who have debts owing *bona fide* to them, by such insolvent, amounting to at least two thirds of all the moneys owing by such insolvent, to present a petition to the chancellor, &c. praying that such insolvent's estate may be assigned to assignees, to be nominated by the creditors, and such insolvent be discharged from his debts; on which petition the judge shall appoint a certain day for the creditors of such insolvent to appear before him, to shew reason, if any they have, why an assignment of such in-

solvent's estate should not be made, and he discharged from his debts; of which day such insolvent is required to give notice, by advertisement, &c.: And if the judge shall be satisfied, that such insolvent has complied with the requirements of said act, he may direct an assignment of such insolvent's estate to be made to the assignees nominated by the creditors; and upon such assignment being made and certified to the judge, he may thereupon grant such insolvent a discharge from all his debts, due at the time of such assignment, or contracted before that time, though payable afterwards: That the recorder of the city of *New-York* shall, *exofficio*, be equally authorized and required with any judge mentioned in the act, to execute the powers and trusts delegated by the act. The plea then averred, that the defendant living in the city of *New-York*, in the year 1820, and being an insolvent debtor within the true intent and meaning of said act, he did, in conjunction with so many of his *bona fide* creditors residing within the *United States*, whose debts amounted to at least two thirds of all the moneys by him then owing, present his petition, pursuant to the provisions of said act, to *Peter A. Jay*, then and until the 8th of *November*, 1820, Recorder of the city of *New-York*, praying to be discharged from his debts, on the terms prescribed by said act; and said recorder appointed a certain day for said creditors to meet in the *City-Hall* in said city; that notice was given, by advertisement, as said act directs, to the creditors, to appear before said recorder, at said time and place, to shew reason, if any they had, why an assignment of the defendant's estate should not be made, and he be discharged from his debts; that said recorder thereupon directed an assignment of the defendant's estate to be made; and in pursuance of such direction, on said 8th of *November*, 1808, he duly assigned all his estate, both real and personal, to the assignees nominated by the creditors, at a meeting by them held pursuant to the advertisement aforesaid; and said assignees, on said 8th of *November*, 1820, duly certified the same to said recorder, who, being satisfied that the defendant had, in all things, conformed to the matters of him required, according to the true intent and meaning of said act, and the defendant having, in fact, conformed to them, in all respects, did, on said 20th of *November*, 1820, grant to the defendant a certificate of discharge pursuant to the provisions of said act. The plea then set forth the discharge, the introductory part of which was as follows: "Whereas *Daniel B.*

*Hempstead,* an insolvent debtor, in conjunction with so many of his creditors residing within the *United States,* whose debts amounted to at least two thirds of all the moneys owing by the said insolvent, did present a petition to me, praying that the said insolvent, on making an assignment of his estate for the use and benefit of his creditors, might be discharged from all his debts, according to the act of the legislature of the state of *New-York,* entitled " An Act for giving relief in cases of insolvency, and the acts amending the same." The certificate proceeded to recapitulate the proceedings. The effective words of the discharge were these : " By virtue of the power and authority in me vested, I, *Peter A. Jay,* Recorder of the city of *New-York,* do hereby discharge the said insolvent from all his debts due at the time of the said assignment, or contracted for before that time, though payable afterwards, agreeably to the directions of said act; and also, if in prison, from imprisonment." Dated the 20th of *November,* 1820. Signed and sealed.

*Peter A. Jay.* [*L. S.*]

To this plea there was a general demurrer ; and the superior court, in *New-London* county, *October* term, 1824, adjudged it insufficient, and rendered judgment for the plaintiff. To reverse that judgment, the defendant brought the present writ of error.

*Law,* for the plaintiff in error, waived his opening turn.

*Cleaveland* and *Cleaveland* jun., for the defendant in error, contended, 1. That the discharge pleaded was of no avail, because the act under which it was granted, was void, as a law impairing the obligation of contracts This point was established, by the supreme court of the *United States,* in *Sturges* v. *Crowninshield,* 4 *Wheat. Rep.* 122. and *McMillan* v. *McNeill,* 4 *Wheat. Rep.* 209. and has been repeatedly recognized by this Court. *Smith* v. *Mead,* 3 *Conn. Rep.* 253. *Hammett* & al. v. *Anderson & al.* 3 *Conn. Rep.* 304. *Medbury* v. *Hopkins,* 3 *Conn. Rep.* 472. The case last cited agrees with the case before the Court, in all respects. It was an action on a promissory note, made in the state of *New-York,* where both parties at that time resided. The certificate pleaded was granted under the *New-York* insolvent law of the 12th of *April,* 1813. The insolvent afterwards came into this state, and was sued here. The ques-

*New-London,*
*July,*
1827.

*Hempstead*
*v.*
*Reed.*

tion is settled beyond controversy, unless these decisions have been overruled, by the supreme court of the *United States*, in the late case of *Ogden* v. *Saunders*, 12 *Wheat. Rep.* 213. But there is nothing contained in that decision, which goes to shew, that a discharge under the insolvent law of one state, is of any validity out of that state, between citizens of that and a different state, although at the time of executing the contract and obtaining the discharge, both the parties were citizens of the state where the discharge was obtained. The judges were divided, three against three; and the seventh gave his opinion on grounds, which those who were with him in the result, did not accede to. If the opinions of any four judges concurred in any thing, it was in this, that a certificate of discharge under the insolvent law of one state, cannot be pleaded in bar of an action brought in another state.

2. That the plea was bad, aside from the invalidity of the insolvent law. All matters relied upon for defence, not by law presumed, must be specially set forth in pleading. If a party relies upon a foreign law, he must set it forth as it is, that the court may see whether he has complied with its requirements. *Brackett* v. *Norton*, 4 *Conn. Rep.* 517. *Walker* v. *Maxwell*, 1 *Mass. Rep.* 104. And it is necessary to shew an exact conformity to the law set forth. In view of these general principles, the plea is defective, first, because the law set forth requires, that notice of the day appointed by the judge for the creditors to meet, shall be given by the insolvent, by advertisement.— The allegation is merely, that notice of the meeting was given; but the plea does not allege by whom the notice was given, when, nor how long given, nor when was the time appointed for the meeting.

Secondly, the allegation is, that notice was given as said act directs; but there is no averment what the act directs.

Thirdly, there is no allegation that the defendant was, by virtue of any law, payment, receipt or discharge, ever discharged from this contract. The only thing that even looks like this, is the allegation that the plaintiff ought to be barred, because, &c. then making a recital of certain facts, without any allegation that by means or force of these facts the defendant is discharged, or said contract annulled.

Fourthly, the law stated does not discharge the contract, but authorizes the judge to discharge, on certain conditions. No

certificate of discharge appears ever to have been granted up-<span>*New-London,* July, 1827.</span> on such a law as is stated in the plea.

Fifthly, it appears, that the certificate of discharge set forth was founded on an entirely *different* law from that stated in the plea. The law stated by the pleader, is entitled " An Act for giving relief in cases of insolvency." The law on which the certificate is founded, the recorder states, is an act of the legislature of the state of *New-York*, entitled " An act for giving relief in cases of insolvency *and the acts amending the same.*"

Hempstead *v.* Reed.

Sixthly, the law alleged in the plea, is simply, that the insolvent may petition to be discharged, on making an assignment, without saying for what use; and the allegation is, that the insolvent so petitioned. The certificate purports to be granted upon the petition of the insolvent, in conjunction with his creditors, to be discharged, on making an assignment *for the use and benefit of his creditors.*

Seventhly, the recorder attempts to discharge the insolvent's person *from imprisonment.* For this the law stated shews no authority.

*Law*, for the plaintiff in error, in reply, contended, 1. That both the parties having been citizens of *New-York*, where, and at the time when, the law was enacted, the contract was entered into, and the discharge was given, and the debt having been contracted after the passage of the law, the discharge was a good defence to the action, according to the decision in *Ogden* v. *Saunders*, 12 *Wheat. Rep.* 213. In that case, a majority of the supreme court established the broad principle, that a bankrupt or insolvent law of a state, discharging the person and property of the debtor from liability, is valid with respect to debts subsequently contracted. If the discharge is valid in *New-York*, as between these parties, it is valid in every other state. The point at which Judge *Johnson* departs from his brethren, *Washington, Thompson* and *Trimble*, is when he comes to citizens of *different* states. This being a constitutional question, the decision of the supreme court is *binding* upon the state courts; and it is immaterial whether it was made by a bare majority, or unanimously.

2. That if the discharge was valid, the plea was sufficient. Most of the objections urged against the plea are matters of *form*, which the plaintiff can take advantage of only by special demurrer. The law is so far set forth as to shew, that the de-

*New-London,*
July,
1827.

Hempstead
*v.*
Reed.

fendant has brought himself within its material requirements. As to the title of the act, the variation complained of, is not material. All acts relating to the same subject, constitute but one act. [The learned counsel examined and replied to all the objections; but no further minutes of his remarks have been preserved.]

DAGGETT, J. The defendant in error contends, that the plea is insufficient, because if the act were valid, it is not well pleaded. Here several objections are relied on; one only of which will be noticed, as that, in the opinion of the Court, is fatal to the plea.

The act counted upon, and set up, is introduced into the plea, and repeatedly declared to be "An act for giving relief in cases of insolvency."

It is averred, that the recorder of the city of *New-York,* by the act declared on, is authorized to exercise the power to discharge insolvent debtors, in the cases therein mentioned. On inspection of the certificate of discharge, recited in the plea, *in hisce verbis,* granted, as the plea alleged, by *Peter A. Jay,* recorder of the city of *New-York,* to the defendant, it appears, that the proceedings were had, and the discharge allowed, by virtue of an act of the legislature of the state of *New-York,* entitled "An act giving relief in cases of insolvency, *and the acts amending the same.*" What acts of amendment existed, and if any existed, what provisions they contained, no where appears. On those, in part, the recorder's certificate of discharge rests for its validity; and yet they are neither pleaded, counted upon, nor referred to, except in the certificate as before stated. It is very clear, that the courts in this state cannot judicially take notice of these acts of the legislature of *New-York,* and certainly not of proceedings under them. Both must be set out, with at least certainty to a common intent; but here no part of the acts amending the act of the 12th of *April,* 1813, and on which the discharge is grounded, is shown to the court. That the laws of the state of *New-York* are, in this state, deemed foreign laws, and must be proved as facts, appears in *Brackett* v. *Norton,* 4 *Conn. Rep.* 517. That proceedings under them must be specially set forth, in cases of this nature, is a doctrine too familiar to require argument. The plea is, therefore, bad.

But a far more important question has been argued, by the

counsel, one which involves the merit of the defence, and on which I will now express an opinion. That question is, *could this defence avail the defendant, if well pleaded?* Here two enquiries are naturally suggested.

1. Would the matter upon the facts set forth, if correctly pleaded, avail the defendant before the tribunals of the state of *New-York?*

2. And if so, will the defence be sustained, by the courts of *Connecticut?*

The peculiar importance attached to one of these enquiries, and the manner in which it has been discussed and decided, by the courts of the *United States,* and several of the state courts, seem to justify a few preliminary remarks. Whether since the adoption of the constitution of the *United States,* the legislature of a state can pass a law discharging a debtor from his contract to pay a debt consistently with the 10th section of the 1st article of the constitution, which declares, that "no state shall pass any law impairing the obligation of contracts," is a question which has undergone all the research, which genius, talent, and learning could bestow on it, by the bar, and the bench. It has been truly *vexata questio ;* and perhaps, in some respects in which it may be viewed, it is yet an open question.

Again : Bound together in the most interesting and important relations, as are the *United States* and the several states, conflicting opinions in their respective tribunals, especially in regard to constitutional questions, could not be too deeply deplored. If, on such questions, there could be a harmonious concurrence of opinion, every patriot would rejoice. If this cannot be attained, it is no improper condescension in the state tribunals, to *yield* to the supreme tribunal of the nation, to which is wisely confided the power of an ultimate decision of such questions.

In *Jackson* ex dem. *St. John* v. *Chew,* 12 *Wheat. Rep.* 153. the supreme court say : "This Court adopts the local law of real property, as ascertained by the decisions of the state courts, whether these decisions are grounded on the construction of the statutes of the state, or form a part of the unwritten law of the state." And again in the same case, the following declaration forms a part of the opinion of the court : "So also, in the cases of *Polk's* lessee v. *Wendall,* 9 *Cranch* 98. and *Thacher* v. *Powell,* 6 *Wheat. Rep.* 127. the construction of state statutes respecting real property, was under consideration ; and the

court say, they will adopt and be governed by the state con-struction, when that is settled, and can be ascertained, especial-ly where the title of land is concerned." Again, in the same opinion, it is said, (speaking of the necessity of adopting the de-cisions of the state courts relative to the construction of stat-utes, or the application of settled rules of real property)— " Such a course is indispensable in order to preserve uniformi-ty, otherwise the peculiar constitution of the judicial tribunals of the states and of the *United States*, would be productive of the greatest mischief and confusion." These principles are so fit, and so eminently worthy of regard, and express such exten-sive comity to the state tribunals, that they call for a correspond-ing comity on their part; and justify this Court in yielding unre-servedly to the decisions of the supreme court, when ascertain ed, in all questions involving a construction of any part of the constitution of the *United States*.

Having made these remarks, the first question above stated will be considered; would the matters, upon the facts set forth in this plea, if correctly pleaded, avail the defendant before the tribunals of the state of *New-York ?*

In *Golding* v. *Prince*, 5 *Hall's Law Journal* 602. Judge *Washington* gave an opinion, that since the adoption of the constitution of the *United States*, no state could pass a bankrupt law, because that power was, by the constitution, exclusive in the congress. In *Blanchard* v. *Russell*, 13 *Mass. Rep.* 1. the supreme court of *Massachusetts*, in *March*, 1816; in *Adams* v. *Story*, in 1817, Judge *Livingston*, in the circuit court of the *United States ;*—in the *Farmers' and Mechanics' Bank* v. *Smith*, the supreme court of *Pennsylvania*, in 1817, 6 *Hall's Law Journal* 547.—held, that such laws were valid, when passed by the states, no bankrupt law of the *United States* being in opera-tion ; and that a discharge regularly obtained under them, was good. In *Sturges* v. *Crowninshield*, in 1819, 4 *Wheat. Rep.* 122. the supreme court of the *United States* decided, that "since the adoption of the constitution of the *United States*, a state has authority to pass a bankrupt law, provided such law does not impair the obligation of contracts, within the meaning of the constitution, *art.* 1. *sect.* 10. ; and that a law of the state, which not only liberates the person of the debtor, but discharges him from all liability for any debt contracted previous to his dis-charge, so far as it attempts to discharge the contract, is a law impairing the obligation of contracts," and therefore void. In

that case, the law of the state of *New-York* then in question, was passed after the contract was made ; and it was therefore retrospective ! In *McMillan* v. *McNeill*, 4 *Wheat Rep.* 209. the court, at the same term decided, but without argument, that " it made no difference in the application of the principle, whether the law was passed before or after the debt was contracted." In *Mather* v. *Bush,* 16 *Johns. Rep.* 233. the supreme court of the state of *New-York,* in 1819, adopted the doctrine of the supreme court of *Pennsylvania* and *Massachusetts,* and held, that the insolvent act now in question was valid, so as to discharge the debtor from all liability, the debt having been contracted in *New-York,* before the passage of the law ;—the debtor having obtained a discharge under the act ; both parties being, and always having been, citizens of *New-York.* That case was, in the opinion given, not considered as opposed to the decision o f *Sturges* v. *Crowninshield,* or *McMillan* v. *McNeill,* cited above.

The first case involving this question, which came before this Court, was that of *Smith* v. *Mead,* 3 *Conn. Rep.* 253. in *June,* 1820. The debt was contracted in *Canada,* by a citizen of *New-York,* with a citizen of *New-York,* in *July,* 1818. A discharge under the insolvent law of the state of *New-York,* passed *April,* 1813, (the law now pleaded) was, with the proceedings under it, set up as a defence. It was decided, that as the contract was made in *Canada,* the parties did not refer to the insolvent law of *New-York,* and therefore, if it were valid, the discharge under it was without any effect. This Court also expressed its acquiescence in the decisions in *Sturges* v. *Crowninshield,* and *McMillan* v. *McNeill,* considering them as the voice of the court entrusted to decide ultimately questions of this description. In *Hammett* v. *Anderson,* 3 *Conn. Rep.* 304. in the same year, the same doctrine was holden, where the debt was contracted in *New-York,* between citizens residing there, subsequent to the insolvent law, and a discharge under it pleaded. Judge *Bristol* dissented in both cases. He held, that the cases cited from *Wheaton,* did not settle the question of the validity of a state law when the debt was contracted and a discharge obtained under it, the parties being citizens of the same state. He concurred in the opinion of Chief Justice *Spencer,* in *Mather* v. *Bush,* cited above. In the cases of *Medbury* v. *Hopkins,* 3 *Conn. Rep.* 472. and *Woodbridge* v. *Wright,* 3 *Conn. Rep.* 523. the same doctrine was recognized by this Court, fol-

lowing, as was believed, the decisions of the supreme court of the *United States*.

In 12 *Wheaton* 213, the case of *Ogden* v. *Saunders* is reported at large ; and the reporter has furnished the decisions of several other cases argued in connection with it. It is to be observed, that these cases had been continued, in the supreme court, two or three terms, for advisement, after the most elaborate and learned arguments of eminent counsel. In the principal case, *Ogden* v. *Saunders*, the plaintiff, a citizen of *Louisiana*, sought, by writ of error, to reverse a judgment obtained against him, by the defendant in error, a citizen of *Kentucky*, before the district court of the *United States* in *Louisiana*. The plaintiff below declared upon certain bills of exchange, drawn in 1816, by one *Jordan* of *Lexington*, in *Kentucky*, upon the defendant below, *Ogden*, in the city of *New-York*, (the defendant being then a citizen and resident of *New-York*,) accepted by him there, and protested for non-payment. The defendant pleaded, among other pleas, a certificate of discharge under an act of the state of *New-York*, of 3rd *April*, 1801, for the relief of insolvent debtors, called *the three fourths act*. The facts were found in the form of a special verdict, on which the court in *Louisiana* rendered a judgment for the plaintiff below, thereby declaring the act void ; and the cause was brought up, by writ of error. Judges *Washington*, *Thompson* and *Trimble* were in favour of a reversal, proceeding on the ground, that the debt having been contracted subsequent to the passage of the law, although the creditor was a citizen of *Kentucky*, and the suit instituted in *Louisiana*, the law of *New-York* and the certificate of discharge under it, created a bar ; and that the decisions of *Sturges* v. *Crowninshield* and *McMillan* v. *McNeill* did not govern the case. Chief Justice *Marshall*, and Judges *Duvall* and *Story*, were in favour of an affirmance, adhering to the doctrine in the above cases. Judge *Johnson*, holding the destiny of the case in his hands, concurred with the three judges last-named in affirming the judgment, on the ground that the law of *New-York*, did not affect the creditor *Saunders*, as he was a citizen of *Kentucky*, and had not submitted to the laws in *New-York*, by instituting his suit before their tribunals. In the case of *Shaw* v. *Robins*, cited in a note, page 369. of the 12th of *Wheaton*, the decision was grounded on similar principles, and governed by that of *Saunders* v. *Ogden*. In the history of this case, page 357. *Wheaton*, the

learned and faithful reporter, says : " *Judgment having been en-* <span>*New-London,*</span> *tered in favour of the validity of a certificate of discharge under* the *state laws in those cases (argued in connection with Ogden* v. *Saunders) where the contract was made between citizens of the state under whose law the discharge was obtained, and in whose courts the certificate was pleaded, the cause was further argued, by the same counsel, upon the points reserved, as to the effect of such a discharge, in respect to a contract made with a citizen of another state, and where the certificate was pleaded in the court of another state, or of the United States.*"

I cannot doubt the correctness of the information thus given in relation to these cases : and if the decisions were as declared by the reporter, it follows irresistibly, that the first question in this case, as before stated, *viz. Would the matter upon the facts set forth, if correctly pleaded, avail the defendant before the tribunals of New-York,* must be answered in the affirmative, in conformity to the decisions of the supreme court; because *that* must have been the precise point adjudged in the cases mentioned.

I am, then, brought to the second question proposed, *viz. Will such a defence be sustained by the courts in Connecticut ?* I am well satisfied, that this question must also be answered in the affirmative. That an instrument executed in *New-York*, by the creditor, releasing the debt, and that an award of arbitrators, or a judgment of a court of competent jurisdiction in *New-York* against the creditor's right of recovery, would bar it, before a court in *Connecticut,* cannot be doubted. In the case of *Griswold* v. *Pitcairn,* 2 *Conn. Rep.* 84. it was declared, by the court, to be an established rule, that a foreign judgment, when used by way of defence, is as conclusive, to every intent, as one of our own courts. It is no less clear, that a certificate of discharge legally obtained under a valid act of the state of *New-York,* will be a discharge every where. It has been shown, that this defence would have prevailed before the courts where the law was passed, where the parties lived, where the contract was made, and where the discharge was obtained. It ought, then, upon principles of law generally recognized, to prevail in *Connecticut.* In *Pearsall & al.* v. *Dwight & al.* 2 *Mass. Rep.* 89. Chief Justice *Parsons,* in delivering the opinions of the supreme court, on the question whether the statute of limitations of *New-York* could be pleaded to an action on a promissory note executed in *New-York,* and sued before a court

New-London,
July,
1827.

Hempstead
v.
Reed.

in *Massachusetts,* by a citizen of the former state, against a citizen of the latter state, lays down the following as established principles of law : " The law of the state of *New-York,* will be adopted, by the court, in deciding on the nature, validity and construction of the contract. The form of the action, the course of judicial proceeding, and the time when the action must be commenced, must be directed, exclusively, by the laws of this commonwealth." In 5 *Mass. Rep.* 509. is the case of *Baker* v. *Wheaton.* That was an action on a promissory note, made by the defendant, payable to one *Benjamin T. Chandler,* and by him indorsed to the plaintiff. The defendant pleaded in bar the several insolvent acts of the state of *Rhode-Island,* and that he was discharged pursuant to those acts ; and he avers, that he and *Chandler* were citizens of the state of *Rhode-Island,* at the time of the discharge, and long before and after ; and that *Chandler,* long after the discharge, indorsed the note to the plaintiff. The suit was brought in the court of *Massachusetts ;* and one question was, whether the discharge was a good bar. The supreme court held, that it was ; and *Parsons,* Ch. J. in pronouncing the opinion of the court, thus speaks :— " When the contract was originally made, the parties were both citizens and inhabitants of *Rhode-Island.*—The contract was there made ; and there to be performed. The laws of *Rhode-Island,* therefore, gave effect to the contract ; and by those laws must the legal operation of it be determined. When, therefore, the defendant was discharged from the contract, *lege loci, the promisee was bound by that discharge,* as he was a party to the laws of that state, and assenting to their operation. But if, when the contract was made, the promisee had not been a citizen of *Rhode-Island,* he would not have been bound by the laws of it, in any other state ; and holding this note at the time of the discharge, he might afterwards maintain an action upon it, in the courts of the state." These appear to be sound legal positions, and hardly need support. They were laid down after argument, deliberation and advisement. Mr. Justice *Johnson,* in the case of *Ogden* v. *Saunders* (page 362—3.) quotes this decision with approbation. Chief Justice *Spencer,* in *Mather &* al. v. *Bush,* 16 *Johns. Rep.* 249, 250. recognizes the doctrine, and adds, that the position is universally recognized in courts of justice. *Huberus (vol. 2. b. 1.—tit. 3.)* in a very learned disquisition on the effect of the *lex loci contractus,* lays down the proposition, that by the courtesy of nations, whatever laws are

carried into execution within the limits of any government, *New-London, July, 1827.* *are considered as having the same effect every where, so far as they do not occasion a prejudice to the rights of other governments, or their citizens.* It is not pretended, that the law of *New-York* in question is subject to the exception stated by *Huberus*, at the close of his position.

Hempstead v. Reed.

With these views of this much agitated question, I am satisfied, that the matter of the defence, if correctly pleaded, would be a bar to the plaintiff's action upon the note ; but on account of the defects in the plea, the judgment of the superior court must be affirmed.

HOSMER, Ch. J. and BRAINARD, and LANMAN Js. were of the same opinion.

PETERS, J. I concur with my brethren in affirming the judgment of the superior court, for the reasons assigned by Judge *Daggett*. But I cannot grope through a labyrinth of legal lore, not indeed endless, but "lengthening as I go," to find reasons for reversing our decision in *Smith v. Mead*, 3 *Conn. Rep.* 253., merely to dispose of a question *hypothetically* raised. I bow with reverence to the decision of the supreme court, as the *dernier resort*, in all cases arising under the constitution of the *United States*. But I cannot surrender my own opinion, until convinced by argument or authority. The question discussed with so much learning and ability *here*, as well as in the supreme court of the *United States*, is admitted to be *vexata questio,—yet open ;* and, I trust, it will remain so, until another case arises ; for we cannot shut it, unless it is already done. It certainly is not the point in judgment in this Court, nor in the more discordant decision of the supreme court.

Judgment affirmed.*

* A petition for a new trial, on the ground of mispleading, was brought to the superior court, in *January*, 1828, and was granted. The cause was thereupon entered anew for trial ; when it was withdrawn by agreement.