## Stow v. Parks.

1. PLEADING.—BANKRUPT'S DISCHARGE.—In pleading a discharge under the bankrupt law, it is necessary to set out all the facts necessary to confer jurisdiction to grant it, and these allegations being sustained, the discharge will be held valid, unless impeached for fraud.

2. SAME.—A plea of discharge under the bankrupt law is good without alleging that the debt in question was not contracted in *a fiduciary capacity;* that matter being in avoidance of the plea and proper matter for replication.

3. BANKRUPT LAW.—The bankrupt act of 1841 was operative and had equal effect in the territories as in the States, notwithstanding the provision of the ordinance of 1787, which provides, that no law ought ever to be made or have force in the said territory that shall in any manner whatever interfere with or affect private contracts or engagements, *bona fide* made, and without fraud, previously formed.

(1 *Chand.* 60.)

ERROR to the late District Court for *Milwaukee* County.

This was an action of assumpsit. The defendant pleaded in bar a discharge under the bankrupt act of congress, passed in 1841. To this plea there was a demurrer. There was also pleaded, by the defendant, the statute of limitations, which was withdrawn, and the cause was heard before the district court, on the demurrer, which was sustained, and judgment was given for the defendant, and the plaintiff brought his writ of error.

The case is fully stated in the opinion of the court.

*Jenkins & Crawford*, for plaintiff in error.

*A. Finch*, for defendant in error.

JACKSON, J. This was an action of assumpsit, brought by *Alexander W. Stow*, plaintiff in error, against *Rufus Parks*, defendant in error, at the June term, 1846, of the district court for Milwaukee county, to recover of the said defendant the sum of $1,500.

The declaration of the plaintiff contained the usual money counts, to which the defendant pleaded the general issue,

together with two special pleas in bar : one alleging and setting forth the discharge of the said defendant under the act of congress, entitled " An act to establish a uniform system of bankruptcy throughout the United States," passed August 19, 1841 ; and the other, the plea of the statute of limitations. To the first of these special pleas, a demurrer was filed, in which several special causes of demurrer were alleged, and to the second a replication. The cause was continued until the November term of said court, when the said defendant withdrew his plea of the statute of limitations, and the case was argued upon the demurrer of the plaintiff to the defendant's special plea of discharge in bankruptcy ; which demurrer was overruled by the court, and judgment entered for the defendant upon the same, with costs. A writ of error was brought to reverse this judgment.

The grounds of error alleged are of a two-fold character : first, those of form ; and, secondly, those of substance. The former relate to the manner in which the plea of discharge is drawn, and the latter to the sufficiency of the discharge itself to bar the plaintiff's action.

We propose to consider these different grounds of error assigned in the order in which they are presented.

1. Is the defendant's plea so defectively framed as to be bad upon special demurrer ?

The first and most important inquiry upon this branch of the cause is, has the defendant, in his plea of discharge, set forth such facts as gave to the court, from which he obtained his discharge, jurisdiction ? 6 Hill, 607. If the jurisdiction clearly appears, then all such facts as were necessary to be proved in order to obtain his discharge, will be presumed to have been proved, and it was unnecessary for the defendant to have averred them specifically in his plea. *Price v. Bray*, 1 Pa. L. J. 465.

It is laid down by the supreme court of New Jersey, in the case of *Price v. Bray*, above cited, and in which the case

of *Sacket v. Andros*, 5 Hill, 128 ; and of *Stephens v. Ely*, 6 id. 609, are referred to, " that as a question of pleading, the facts which give the jurisdiction must be averred. In the case of plea of bankruptcy, it is the filing of a petition by a bankrupt, a resident of the district, to be declared a bankrupt. The rule stands upon sound reason. It is not every bankrupt that the district court is authorized to discharge from his debts, but such debtor as has first applied to be declared a bankrupt. The plea should, therefore, aver that such a petition, to be declared a bankrupt, was filed ; that thereupon such proceedings were had, that the debtor was declared a bankrupt, etc., and that, by the order of the court, he had been discharged, etc.; and the jurisdiction thus appearing, all such facts will be presumed as were necessary to authorize the decree. Such discharge thus pleaded, will be a complete bar to *all debts provable under the act*, unless impeached for fraud."

Tested by this standard, the plea of the defendant is undoubtedly good, and would not be liable to either of the objections taken by the plaintiff in error upon special demurrer.

It is further insisted, however, that the plea is defective in not averring that the " plaintiff's demand did not arise in consequence of the defalcation of the defendant in a fiduciary character." Now, the authorities are in conflict as to the necessity of such an averment. It is conceeded that, by the late bankrupt act, the courts of the United States, taking cognizance of cases in bankruptcy, had no jurisdiction over fiduciary debts. In the case of *Chapman v. Forsyth et al.* 2 How. 208, Mr. Justice McLean, in delivering the opinion of the supreme court of the United States, remarks : " If fiduciary debts are not within the act, a discharge can in no respect affect the interest of the fiduciary creditor. Without his consent, it is clear that the bankrupt court can take no jurisdiction of his debt. And although the bankrupt may include the debt in his schedule, and the discharge may be

general, yet as the law gave the court no jurisdiction over the debt, it is not discharged." It is exceedingly doubtful, therefore, whether, under a fair construction of the bankrupt act of 1841, any such averment as is insisted on by the plaintiff in error is requisite in a plea of discharge.

The more correct practice would seem to be, if the plaintiff sought to impeach the discharge upon the ground of the fiduciary character of the debt sued upon, to allege that fact in his replication to the defendant's plea, and by an issue thus joined, test the validity of his discharge. The plea in question, however, is not, in reality, liable to this objection. It does, argumentatively, at least, contain such an averment ; and although, if such an averment were necessary, this plea would be bad for argumentativeness if specially demurred to, yet, as no such special ground of demurrer is alleged, the plaintiff cannot now avail himself of such an objection. 5 Hill, 319. Having thus disposed of those grounds of error alleged, which relate to the *pleadings* simply, the next and most important error assigned remains to be considered. It is, that " the discharge having been obtained by the defendant upon his own application, and without the assent of the plaintiff, and granted *within the territory of Wisconsin*, is void, being in violation of the ordinance of July, 1787."

Were the question of the constitutionality of the act of congress of 1841, entitled " An act to establish a uniform system of bankruptcy throughout the United States," now for the first time raised, it might, perhaps, involve consideraations of such magnitude as to demand an elaborate investigation by this court.

The highest judicial tribunal in the nation has, however, pronounced the act to be constitutional. 1 How. 277 ; 2 id. 227. And no principle is better established, than that the exposition of the constitution, given by the supreme court of the United States, is conclusive on the state courts. 8 Pick. 196 ; 3 Marsh, 423 ; 6 Conn. 493 ; 6 Binn, 272 ; 3 id. 84, 85.

That the act of congress, of 1841, was designed to have effect equally as well in *all the territories* of the United States as in the several states, cannot be questioned. In the first section of the act it is expressly declared that " *all* persons whatsoever, residing in any state, district or *territory* of the United States, owing debts, which shall not have been created in consequence of a defalcation as a public officer ; or as an executor, administrator, guardian or trustee, or while acting in any other fiduciary capacity, who shall, by petition, setting forth to the best of his knowledge and belief, a list of his or their creditors, their respective places of residence and the amount due to each, together with an accurate inventory of his or their property, rights and credits of every name, kind and description, and the location and situation of each and every parcel and portion thereof, verified by oath, or if conscientiously scrupulous of taking an oath, by solemn affirmation, apply to the proper court, as hereinafter mentioned, for the benefit of this act, and therein declare themselves to be unable to meet their debts and engagements, shall be deemed bankrupts within the purview of this act, and may be so declared accordingly by a decree of such court."

Nothing, therefore, can be more direct and explicit than the extension of the benefits of the provisions of the law to the people alike of *all the territories*, as well as the states, and embracing " all persons whatsoever," under the limitations and restrictions only as to debts of a fiduciary character.

It is contended, however, in argument, that the law of 1841 is in violation of the ordinance of 1787 ; and, although it may be valid and operative where the provisions of the ordinance do not extend, yet it could not have had effect in the territory of Wisconsin, because to give it such effect would be a violation of the ordinance.

Now this assumes two points : first, that the act of congress is in violation of the ordinance ; and, secondly, that the ordinance is paramount to the authority of the constitution of

the United States, and that in one portion of the Federal Union the constitution is the supreme law, and in another that its authority is suspended, and must yield to the higher authority of the ordinance.

Such a construction, if it were to prevail, would present the extraordinary anomaly of conferring upon the citizens of Pennsylvania or Massachusetts, for instance, under a law of congress designed to be uniform in its operation throughout the United States, privileges which, under the same law, would be withheld from the citizens of Wisconsin; and, although for a debt contracted in Massachusetts, a citizen of Pennsylvania might, in that state, obtain a discharge in the United States court, under a law of congress, yet, if he were to remove to Wisconsin, he would be prohibited from obtaining, under the same law, in the same court, a discharge from the same debt.

Such a construction, while it does not appear to be sustained by reason, would lead to results obviously subversive of every principle of justice.

And if it were sanctioned, " then," indeed, in the language of Mr. Justice STORY, " there would be, at no time, in the United States, the same constitution in operation over the whole people." Surely, such a state of things was never contemplated by the framers either of the ordinance or of the constitution; and we do not find that it has ever been sanctioned by any authoritative adjudications, from the judicial tribunals of the land. We think, however, that no clause or provision of the ordinance will warrant such a construction.

The provision of the ordinance relied on to sustain the demurrer, is that contained in the last clause of the second article, which is in the following words: " And in the just preservation of rights and property, it is understood and declared, that no law ought ever to be made or have force, in the said territory, that shall, in any manner whatever, interfere with or affect private contracts or engagements, *bona*

*fide* made, and without fraud previously formed." Can it be supposed that this clause in the ordinance, an instrument adopted almost contemporaneous with the constitution, will admit of such a construction as to defeat or render inoperative that plain and express provision of the constitution which authorizes congress " to establish *uniform laws* on the subject of bankruptcy throughout the United States ? "

It would clearly seem to be the more rational construction of this clause, to restrict its application to the local legislation of the states and territories, embraced within the old northwestern territory, for which the ordinance was framed, and not to extend it to the general legislation of congress, within the conceded powers conferred by the constitution. This view of it appears to be in harmony with the action both of the legislative and the judicial departments of the general government.

As to the second point impliedly, at least, assumed in the argument, that the authority of the constitution must yield to the higher authority of the ordinance, we think it is unsustained either by the course of national legislation, or by the adjudications of our national tribunals. On the contrary, in the very year of the adoption of the federal constitution, the congress of the United States, acting under it, passed "An act to provide for the territory northwest of the river Ohio," in the preamble to which it is declared, " in order that the ordinance of the United States for the government of the territory northwest of the river Ohio, may continue to have full effect, it is requisite that certain provisions should be made so as to adapt the same to the present constitution of the United States."

From this act of congress, passed at that early period when the intention of the framers of the constitution could scarcely have been mistaken, it is obvious that the ordinance was not at that time regarded as superseding the authority of the constitution ; but that it was deemed necessary, in order that

it might " continue to have full effect, that certain provisions should be made so as to adapt the same to the present constitution of the United States." This view of the question appears to us to be in accordance with a fair construction of the ordinance, and with reason and sound policy. At all events, in a case at best admitting of such *strong doubt* as to the application of the inhibitory clause in the ordinance, we must be governed by the established rule of construction in similar cases, and resolve that doubt in favor of the constitutionality of the law (1 Cow. 550; 7 Pick. 415–474; 12 Serg. & R. 330; 2 Pet. 552; 12 Wheat. 270; 3 Dall. 386), and give it effect within this state; where, indeed, for several years its validity and binding force have been expressly recognized and sanctioned by our territorial supreme court, in entertaining jurisdiction in cases of bankruptcy, in granting discharges, and in holding repeated terms for the sole purpose of carrying out the provisions of the act of congress.

Upon a careful examination, therefore, of the grounds of error assigned in this cause, it is the opinion of this court that the judgment of the court below should be affirmed.

It is accordingly affirmed, with costs.