BARTHOLOMEW *against* CLARK.

A new trial may be granted by the superior court, on motion, for a verdict against evidence.

THIS was an action on the case for false and fraudulent representations respecting the responsibility of a mercantile house, whereby the plaintiff was induced to sell them goods to a large amount on a credit, in consequence of which he sustained a loss.

The cause was tried at *Litchfield, February* term, 1816, before *Edmond, Smith* and *Hosmer,* Js. The questions of fact, whether the representations were made by the defendant with a fraudulent intent, and whether the plaintiff was deceived by them, being submitted to the jury upon the evidence, they found a verdict for the plaintiff, with 2747 dollars 81 cents, damages. The court did not accept this

verdict, because in their opinion it was against evidence; and therefore they returned the jury to a second consideration of the cause. The jury again brought in the same verdict; and the court, on the same ground, returned them to a third consideration. The jury still adhered to their verdict; and the court ordered it to be recorded. The defendant immediately filed a motion in arrest of judgment, which was found not to be true. He then moved for a new trial, because the verdict was found not only without any evidence that the representations claimed to have been made by the defendant were made with a fraudulent intent, or that the plaintiff was deceived or defrauded by them, but against clear and satisfactory evidence to the contrary. The questions of law arising on this motion were reserved for the consideration and advice of the nine Judges.

*N. Smith* and *R. M. Sherman,* for the defendants, observed, that, as this was a clear case of a verdict against evidence, the only general question on the motion was, whether the court had *the power* to grant it. Under this general question they proceeded to consider, first, whether the court had the power of granting a new trial for a verdict against evidence *on any form of application;* and secondly, whether an application *by motion* was a proper form.

1. In no country where the common law of *England* prevails, has the verdict of a jury in civil causes been regarded as final in the first instance. Some mode of revision has always existed. Anciently, the mode in *England* was by *attaint* of the jury; and in *Connecticut,* by an application for a *review,* which was granted of course to the unsuccessful party, until there had been two verdicts the same way.(*a*) In both countries the ancient mode has given way to the practice of granting new trials; and this is always done in *England* where the judge who tried the cause is dissatisfied with the verdict as being against evidence. 3 *Bla. Com.* 387. *Bul. N. P.* 327. *Bright* v. *Eynon,* 1 *Burr.* 397. Lord *Mansfield* says, in the case last cited, that trials by jury in civil causes could not now subsist without the power of granting new trials. He considers the exercise of this power, upon many occasions, as absolutely necessary to the

(*a*) This practice still exists, to a certain degree, in some of the *New-England* states. *R.*

*Hartford,*
*June, 1816.*

Bartholomew
*v.*
Clark.

attainment of justice. 1 *Burr.* 393. There are many other authorities to the same effect. *Goodtitle* d. *Alexander* v. *Clayton & al.,* 4 *Burr.* 2224. *Rex* v. *Mawbey & al.,* 6 *Term Rep.* 619. 638. *Goodwin* v. *Gibbons,* 4 *Burr.* 2108. *Tyley* v. *Roberts,* cited in *Musgrave* v. *Nevison,* 1 *Stra.* 584. 6 *Bac. Abr.* 663. *et seq.* (*Wils.* edit.) 2 *Ves.* jun. 288.

It is every day's practice, in *England,* to grant a new trial for excessive damages. This is taking much stronger ground than the present case requires.

There are two important objects in the trial by jury; first, the protection of the citizen against the oppression of government; and secondly, the ascertainment of facts. The first of these objects relates exclusively to criminal prosecutions; and is effectuated by aid of the maxim, that a prisoner once acquitted shall not be tried again. But where the controversy is between two citizens regarding their civil rights, there is no danger of oppression from the government. The second object, so far from being counteracted, is promoted, by a discreet exercise of the power in the court to bring a cause before another jury for a rehearing.

In this country there is not a decision to be found denying the power in question. In *Massachusetts,* Ch. J. *Parsons,* delivering the opinion of the supreme court in *Hammond* v. *Wadhams,* 5 *Mass. Rep.* 353. 355. says, " We may, and we ought to grant a new trial, when the verdict is against the evidence, or when it is manifestly against the weight of the evidence. In such cases, the facts ought to be enquired into by another jury." In another case in the same court, *Sedgwick,* J. delivering the opinion of the court, says, " The objection in this case is, that the verdict is against evidence; and if it be clearly and manifestly so, it certainly ought to be set aside." *Wait* v. *M'Neil,* 7 *Mass. Rep.* 261. 263. In *New-York,* the granting of a new trial on the ground of a verdict against evidence, is familiar in practice, and sanctioned by the courts as established law. *Talcott* v. *The Commercial Insurance Company,* 2 *Johns. Rep.* 128. 130. *Talcott* v. *The Marine Insurance Company,* 2 *Johns. Rep.* 137. It has also been universally admitted in that state, whenever the question has been agitated, that their courts have a legal right to grant new trials for *excessive damages* in actions for *torts;* and that right has been frequently exercised.

*M'Connell* v. *Hampton*, 12 *Johns. Rep.* 234. The same law prevails in *Pennsylvania*. *Shippen*, President, delivering the opinion of the court in *Cowperthwaite* v. *Jones & al.*, 2 *Dall.* 56. says, " Whenever it appears with reasonable certainty, that actual and manifest injustice is done ; or that the jury have proceeded on an evident mistake, either in point of law or *fact ; or contrary to strong evidence ;* or have grossly misbehaved themselves ; *or given extravagant damages ;* the court will always give an opportunity, by a new trial, of rectifying the mistakes of the former jury, and of doing complete justice to the parties." In *Keble's* Lessee v. *Arthurs*, 3 *Binn.* 29. *Tilghman*, Ch. J. asserted it as the undoubted right of the court to grant a new trial, even where there had been two verdicts in favour of the same party, upon *a simple matter of fact.* That a verdict against evidence is regarded in *Virginia* and *Kentucky* as a legal ground for a new trial, is apparent from the cases of *M'Rae's* Executors v. *Wood's* Executor, 1 *Hen. & Munf.* 548. and *Casky* v. *January, Hardin's Rep.* 539.

Such being the established law and practice of the courts in *England* and in our sister states, what is there in *Connecticut* to produce an anomaly ? If there is any thing, it may be safely affirmed, it is some statutory provision. And the fact is, we have a statute on the subject of granting new trials. It provides as follows : " That the superior and county courts in this state, shall and may, from time to time, as occasion shall require, and as shall by them be judged reasonable and proper, grant new trials of causes that shall come before them, for mispleading, or discovery of new evidence, or for *other reasonable cause* appearing, *according to the common and usual rules and methods* in such cases."(*a*) Do these provisions *take away* the power in question ? If a verdict against evidence is a " reasonable cause" for granting a new trial, it would rather seem that the power is here conferred, or at least sanctioned.

It may be said, that the power of the court to return the jury to a further consideration of the cause, when, in the opinion of the court, the verdict is against evidence, or the weight of evidence,(*b*)—a power peculiar to this state,—is a substitute for the power of granting a new trial on the

(*a*) *Tit.* 6. *c.* 1. *s.* 13.          (*b*) See *tit.* 6. *c.* 1. *s.* 11.

*Hartford,*
June, 1816.

Bartholomew
*v.*
Clark.

same ground. But it is absurd to suppose that the latter power is superseded by the former. The provisions authorizing the court to send out the jury, had existed, without variation, for more than half a century when the statute regarding new trials was passed.(*a*) Besides, the power of returning a jury who have already made up their minds upon a question of fact to a further consideration of it, is by no means equivalent to that of bringing the cause before another jury, who are uninfluenced by pride of opinion, and unshackled by fixed views of the subject.

2. The present mode of application for a new trial is a proper one. It is difficult to conceive why the application in this case should be in a form different from applications for the same object on other grounds. Our statute regarding new trials makes no distinction. We have no other statute which makes one. Nor is there any principle of the common law which makes one. The court unquestionably have the power to adopt such a course of practice in relation to this subject as appears to be most convenient and subservient to the ends of justice. By the exercise of this power, many late improvements have been made in our jurisprudence; particularly, that of directing the jury, when the cause is first committed to them, on all the questions of law, and of granting a new trial, on motion, for a misdirection. *Swift's Ev.* 169. 170. There may still be cases where a new trial can be applied for only by petition; as where the cause is no longer pending, and the parties are out of court. In such case, a petition and citation are necessary to bring the cause and the parties before the court. But that necessity cannot exist where the application is made at the same term at which the trial was had. Motions for a new trial for misbehaviour of the jury, under the name of motions in arrest, have been long known in the practice of our courts.

*Daggett* and *Bacon,* contra. 1. There is no *case* before this Court upon which they can act. The judges before whom the cause was tried, ought to have reported the evidence, as well as their opinion upon it, so that this Court may judge for themselves whether the verdict was right or

(*a*) See the editorial notes to the 11th and 13th sections.

wrong. All that appears to this Court is, that a majority of the judges who were present at the trial, were dissatisfied with the verdict as being against evidence. If that evidence were stated to this Court, a majority of the judges might be of a different opinion. According to the established practice in *England,* and in our sister states, where new trials are granted on motion, the certificate of the judge at *Nisi Prius* contains a minute report of the evidence, with his opinion upon it. 3 *Bla. Com.* 391, 2.

2. Admitting that this application presents the case sufficiently, yet the court will not take cognizance of it *on motion.* The application should have been by petition, with a citation regularly served upon the adverse party. Formerly, this was the practice in all cases. Before 1762, the petition was addressed to the General Assembly; afterwards, to the court that tried the cause. In *May* 1807, an act(*a*) was passed authorizing the judges of the superior court to institute rules of practice; in pursuance of which the rules in 3 *Day's Ca.* 28, 9. were adopted. But those rules do not touch this case. The same form of application for a new trial on this ground must be pursued, and the same steps taken, now, as would have been required half a century ago.

The statute authorizing new trials provides, that they shall be granted according to the *usual methods.* The only method then known in this state was by petition.

Further, the verdict and the judgment in this case have been *recorded;* and the judgment of a court of competent jurisdiction cannot be set aside *on motion.*

3. It is asked, ought a verdict to stand which is against evidence? The terms in which the question is proposed are imposing and deceptive. The true question is, ought a verdict to stand which is against the opinion of the court? In the case under consideration, how does it appear that the verdict is against evidence? The jury were of opinion that the evidence proved the issue; the court were of opinion that it did not. And it is now taken for granted, that the jury were wrong, and the court right. This is the basis of the argument and of the motion. But does it necessarily follow, that when the court and jury differ on a question of

(*a*) *Tit.* 42. *c.* 15. *s.* 2.

*Hartford,*
*June,* 1816.

Bartholomew
*v.*
Clark.

*fact,* the jury are wrong, and the verdict is to be set aside ? If so, of what use is our boasted trial by jury ?

The verdict of a jury on a question of fact is conclusive, or it is nothing. If the opinion of the court can govern it, the trial by jury is of no worth. When the court and the jury differ on a question of law, the court are certainly right ; when they differ on a question of fact, the jury are certainly right. Hence the maxim of the *good, old* common law, " *ad questionem facti non respondent judices ; ad questionem legis non respondent juratores.*" From this maxim no court in *Connecticut* has yet departed. It is admitted, that no new trial was ever granted in this state for the cause assigned in this motion. Whenever questions of this kind have been agitated, our courts have with one voice said, " The jury are the constitutional judges of questions of fact ; their verdict is conclusive ; we have not power to set it aside, because, in our opinion, it is against evidence. Whatever may be the inclination of our opinions as to the conclusions the jury make from the testimony, it is their province, and not ours, to make those conclusions." That these are the sentiments of our courts and jurists will be found from 2 *Swift's Syst.* 264. *Kirby* 61. 142. 273. 277. 1 *Root* 150.   2 *Root* 144.

All the precedents of our courts are against the motion. And in *Fonereau* v. *Bennet,* 3 *Wils.* 59. and *Brook* q. t. v. *Middleton,* 10 *East* 268. the courts of Common Pleas and King's Bench severally refused a new trial, in a penal action, where the verdict was against evidence, not because it was a penal action, but because the application was against the precedents of fifty years. On the same principle this Court ought to refuse this motion, because it is against all our precedents of more than one hundred years.

Our trials in civil actions are regulated by various statutes ; by which the powers of our courts and juries are distinctly marked. By the statute of *February* 1644, the court were empowered, if they thought the verdict was not according to the evidence, to cause the jury to return to a second consideration of the cause. If they still adhered to their verdict, they were to be discharged, and another jury to be impannelled. In *May* 1694, this statute was repealed, so far as it regarded the impannelling of another jury, and the court were prohibited from exercising the power claimed

by this motion.(a) In 1702 it was enacted, " That the
judges of the court shall have liberty, if they judge the jury
have not attended to the evidence given in, and the true issue
of the case, in their verdict, to cause them to return to a
second consideration of the case ; and shall for the like
reason have power to return them to a third consideration,
*and no more.*"(b)

It is apparent, that while these statutes stand and are
regarded, the court cannot allow this motion, and impannel
another jury to try the issue.

This verdict, like every other verdict which has been
given in this state since the statute of 1694, must stand.
The plaintiff is entitled to it, and to the judgment which
has been rendered upon it, by a court of competent ju-
risdiction.

The courts in *England* are not restrained by positive
statutes from granting new trials. They have no statute
authorizing them to return the jury to a third consideration,
*and no more,* and prohibiting them from impannelling another
jury to try the issue.

When we consider the direction which the court can give
to the verdict while the cause is on trial ; when we consider
the definitive manner in which all questions of law are settled
by the court ; and when we consider that the court can
return the jury to a second and a third consideration of a
question of fact, with powerful and unanswered arguments
on the evidence ; it is apparent, that the court must now
have an almost commanding influence over the verdicts of
the jury. *Experientia docet.* If to this is to be superadded
the power now claimed ; if the court are to set aside the
few verdicts that are now given against their opinion ; there
is an end of the trial by jury. The form may be preserved,
but every vestige of the right is gone.

Little as we now esteem this right, the time may come
when we shall value it at its worth. In the language of an
eminent jurist of our own time,* " It is essential to preserve

Hartford,
June, 1816.

Bartholomew
*v.*
Clark.

(a) *Stat. Conn.* 37. *n.* 21. The act referred to was, as follows : " Whereas
in the Law, title " *Juryes and Jurors,*" in the 4th paragraph, it is said, it shall
be in the power of the court to impannel another jury, &c. it is now repealed,
and it is ordered it shall not be in their power to impannel another jury."

(b) *Tit.* 6. *c.* 1. *s.* 11.

* Chancellor *Kent.*

*Hartford,*
June, 1816.

Bartholomew
*v.*
Clark.

a just balance between the distinct powers of the court and
jury, that the parties may enjoy, in undisturbed vigour, their
constitutional right of having the law decided by the court,
and the fact by the jury."

The case before us is comparatively of trifling importance;
but the distinction goes to the very root and essence of trial
by jury, and may become of inestimable value, and perhaps
of perilous struggle, when the present parties shall have
ceased to exist.

Our juries are taken by lot from the middle walks of life;
from the substantial yeomanry of the state. This will be
the last class which will be reached, and thoroughly cor-
rupted, by the baneful influence of party spirit. The trial
by jury will be our last stake; and may yet be our only
security against the systematic influence and tyranny of
party spirit in judicial tribunals.

SWIFT, Ch. J. The question in this case is, whether the
superior court have a legal power to grant a new trial where
the verdict is against evidence.

To all courts acting on the principles of the common law,
the power is incidental to grant new trials for various causes,
among which one is, that the verdict was against evidence.
This has ever been done in *England*, as well as in sundry
states in the union. Courts in this state, then, acting
according to the common law, have this power, unless pro-
hibited by positive law. The statute respecting this subject
authorizes courts to grant new trials, " for mispleading,
discovery of new evidence, or other reasonable cause, accor-
ding to the common and usual rules and methods in such
cases." This is so far from being a prohibition, it may be
considered as conferring a power to grant new trials where
the verdict is against evidence; for this comes clearly within
the expression, " for reasonable cause, according to the
common rules." It would then seem clear, both by the
common and statute law, our courts possess this power.

It has been supposed from the power of the court to return
the jury to a second and third consideration, the necessary
implication is, that they shall have no further controul of
the verdict; and that in those countries where new trials
are granted on the ground that the verdict is against evi-
dence, the courts have no such power. But there is no

*Hartford,*
June, 1816.

Bartholomew
*v.*
Clark.

inconsistency or impropriety in the exercise of both these powers ; and it may often happen, that a new trial is rendered unnecessary by returning the jury to a further consideration where the verdict is wrong. Though the courts in this state have the peculiar power of returning the jury to a further consideration, yet they elsewhere exercise as great or even greater authority over the jury. They, in the first instance, give them their opinion on the sufficiency of the evidence, which is much more likely to affect the verdict than an opinion given after they have agreed. It would seem, then, that the exercise of this power can furnish no reason why the courts in this state should not grant a new trial where the verdict is against evidence.

No objection can arise from the danger that this power may be abused. It is in criminal cases that juries are considered to be the guardians of the rights of the people against the tyranny and oppression of the government ; but in such cases the power is not claimed to grant new trials.

It is said, that this power has never been exercised ; and that it has always been understood that courts did not possess it. It is true, there has been a peculiar practice in this state with respect to trials by jury. An idea seems to have been entertained, at an early period of our government, probably originating from the power of returning juries to a further consideration, that courts had no other controul over them. The usage was to state to them the testimony and the law, as claimed by each party, avoiding, with the utmost caution, any hint of their opinion with respect to either. When the verdict was brought in, if the court dissented, they returned them to a further consideration, giving them their opinion both as to the law and the evidence. If the jury adhered to their verdict on the third consideration, the court were obliged to submit, let the verdict be ever so clearly against law or evidence. Though for a long time this right of the jury was deemed so sacred that our courts did not venture to change the practice, yet when they assumed their constitutional authority to direct the jury in questions of law, so palpable was the propriety of it, that it met with universal approbation. Precisely the same objection lies against the innovation of directing the jury in matters of law, and granting a new trial if the verdict is against it, as there does against granting a new trial if the verdict is con-

*Hartford,*
*June, 1816.*

Bartholomew
*v.*
Clark.

trary to evidence. If an objection of this kind is to prevail, there can be no improvement in jurisprudence. The science of the law would become stationary. We ought not to be influenced by such narrow views. We ought to adopt every improvement calculated to promote the cause of truth and justice. It is essential to the due administration of justice that such power should be lodged in courts. What can be more preposterous than to say, that the verdict of a jury, often composed of men unaccustomed to weigh testimony, and peculiarly liable to local and personal prejudices and partialities, should never be re-examined and corrected, though opposed to the clearest evidence?

It may be said, that judges are liable to the same influence and partialities. But they do not decide the question of fact; they only furnish the means for a fair investigation of the truth, and an impartial trial of the cause; and from their situation, they act under a responsibility for the rectitude of their conduct, which cannot be supposed to operate on the minds of jurors.

I think a discreet and prudent exercise of this power can be attended with no inconvenience or danger; that it is necessary to adopt it to complete the fabric of jurisprudence, and to give to courts all the powers essential to a due execution of the law. It should be exercised only in clear cases, which will rarely occur. It will leave to juries an important and valuable power in the trial of civil causes; and when it is understood that an erroneous verdict can be corrected, the public confidence in the trial by jury will be increased, instead of being impaired.

I think, therefore, that the motion ought to be sustained.

In this opinion TRUMBULL, SMITH, BRAINARD, BALDWIN, GODDARD and HOSMER, Js. concurred.

EDMOND, J. I did not expect to be called upon, at this time, to give my opinion, and assign the reasons which have governed me in the decision of the questions which in this case are presented to the court, and am not very well prepared to do it. I regret this the more, as the opinion I have formed differs from that of my brethren whose opinions I highly respect. It is, however, my opinion, which I am bound to express; and from the consideration I have given

*Hartford,*
June, 1816.

Bartholomew
*v.*
Clark.

the subject, I cannot persuade myself that the superior court have a right by law, to exercise the power, which they are called upon to exercise, as claimed by the motion ; or, in other words, to grant a new trial after the jury have been returned to a third consideration upon an issue joined on any matter of fact, and have returned a verdict, which, in the opinion of the court, is against, or not warranted by, the evidence in the case.

In actions cognizable by the superior and county courts in this state, the right to have questions of fact tried by a jury, has, from a very early period, been considered as a privilege of primary importance ; and *the power and duty* of the court in relation to verdicts of the jury found upon issues in fact, has been repeatedly the subject of legislative contemplation, and regulated by statute. A slight attention to the various acts which have been passed, will evince that the possibility of a question like the present has not escaped without due consideration. By an act passed in 1644, the court were empowered to return the jury to a second consideration, when in their opinion the verdict was not according to the evidence, and if the jury adhered to their verdict, to discharge them and cause another jury to be impannelled for the trial of the issue, a power every way equivalent in effect to the power of granting a new trial for the same cause after judgment rendered. In 1694, so much of this act as gave to courts the power of rejecting the verdict and impannelling a new jury, was repealed ; by which it appears, that an experiment of fifty years had proved to the satisfaction of the legislature, the inexpediency of vesting the courts with a power, which, in its exercise, might render the privilege of a jury to try issues in fact merely nominal. After this repeal, the only power remaining with the court, in cases where they were of opinion that the verdict of the jury was not warranted by the evidence, was to send them to a second consideration of the case. Within a short period after the repeal mentioned, as appears by our statutes as revised in 1702, it was enacted " That the judges of the court shall have liberty, if they judge the jury *have not attended to the evidence given in, and the true issue of the case in their verdict,* to cause them to return to a second consideration of the case ; and shall, for *like reason,* have power to return them to a third consideration, *and no more.*"

*Hartford,*
June, 1816.

Bartholomew
*v.*
Clark.

(*Tit.* 6. *c.* 1. *s.* 11.) This is the extent of power which the legislature thought it expedient at that time to grant to the court. Accordingly we find in the same act (*s.* 8.) it is enacted, " That all actions that shall be tried before the superior or county courts, when issue is joined on any matter of fact, shall be tried by a jury of twelve men of the neighbourhood, qualified, impannelled and sworn according to law ; who shall find the matter in issue, with the debt or damages, according to law and their evidence ; *and the judges shall make up and declare the sentence thereon.*" To this section there is indeed a proviso, that the parties by agreement may put issues in fact to the court ; but that does not affect the present question. In these several acts of the legislature, previous and up to 1702, we have the *power and the duty* of the court, when there happened to be a difference of opinion on the facts put in issue between the jury and the court, clearly stated and defined ; and since 1702 these acts have not been varied. With the common law power of courts, or their practice, either in *England* or the neighbouring states, in relation to the subject of granting new trials in cases like the one now under consideration, our courts had nothing to do. The common law of *England* could give to our courts no authority on a subject contemplated by our own legislature, and expressly provided for by positive law ; or if it could, which I cannot admit, it is to be remembered that the sole and exclusive power of granting new trials was retained by the Assembly, and remained in the general court, or assistants' court, (so called) from 1644 to 1762, except so far as that power may be said to have been delegated by the act of 1644 repealed in 1694, as already mentioned. Antecedent to 1762, applications for new trials were by petition to the Assembly ; and it is worthy of observation, that from 1694, when the power of the court to discharge the jury and impannel another was taken away, or even from 1644 up to 1762, not a precedent has been shewn, and I presume there is none to be found, where a new trial has been granted by the Assembly, or any court in this state, on the ground now claimed. The law, plain and explicit, had put the question at rest. In 1762, it was enacted, " That the superior and county courts in this state, shall and may, from time to time, as occasion shall require, and as shall by them be judged reasonable and proper, grant new trials of

*Hartford,*
June, 1816.

Bartholomew
*v.*
Clark.

causes that shall come before them, for mispleading, or discovery of new evidence, or for other reasonable cause appearing, according to the common and usual rules and methods in such cases." (*Tit.* 6. *c.* 1. *s.* 13.) From this statute is derived all the power in relation to the subject of granting new trials, which the courts have a right to claim. Does this statute convey the authority contended for? The motion is not founded on mispleading, or the discovery of new evidence. Is it embraced in the words " for other reasonable cause appearing?" Can that be considered as a reasonable cause for granting a new trial, which has been considered by the legislature, and provided for, in another way, by a statute defining and restricting the powers of the court in relation to it? Certainly not.

Should it be said, by the words " common and usual rules and methods in such cases," reference is had to the *English* rules and methods, and that new trials are there granted, when, in the opinion of the judge, the verdict is against evidence, or the weight of evidence given in the case; I answer, the reference, if to the *English* practice at all, can only be to like cases, presented under like circumstances. They have no statutes similar to ours on the subject in question. Their example, therefore, on this point, can furnish neither precedent nor authority.

If the words " common and usual rules and methods," &c. refer to those rules which had been common and usual in this state, it would be absurd to suppose the statute confers the power claimed; for not a solitary instance has been produced to prove the existence of such a rule, or a claim that the court by virtue of this or any other statute might exercise such a power, although the *English* practice must have been well understood. Adopt the construction contended for, and the result is, you give to a statute of more than fifty years standing a construction it has never before received, a meaning not obvious or necessary to render it intelligible; and invest the courts with an extraordinary power, which, in point of expediency, it may be doubtful whether it is best they should possess, and which, if possessed, it is admitted, should be exercised with extreme caution. Let me remark here, that power should be arrogated with caution, and on clear authority, in the exercise of which extreme caution is required.

Hartford,
June, 1816.

Bartholomew
v.
Clark.

Further, admit the principle, and by necessary consequence, you repeal, as to their beneficial effect, all those statutes which secure to the parties, the right to have issues in fact decided by a jury of twelve men of the neighbourhood; for of very little consequence is that right, if after all, the court may grant new trials without limitation as to number, and until a jury can be found to decide the issue correctly in the opinion of the court. I say, without limitation as to number, for so long as the same cause remains for which the new trial was first granted, so long the process of granting a new trial (if the court act consistently) must be repeated.

In respect to any imagined failure of justice in case of an obstinate jury, if the courts are not permitted to exercise such a power, this may be a proper subject for the consideration of the legislature, but furnishes no proof that such a power exists. If, however, it was admissible as an argument, might it not be said, that questions of fact must be ultimately decided somewhere; that the decision may as safely be entrusted to twelve disinterested jurymen of the neighbourhood, as to the judges of the several courts; and that a possible failure of justice may be apprehended in either case.

I will only add, to grant a new trial on the ground stated in the motion, either on a motion in court after verdict, or on a petition brought for that purpose, would be, in my opinion, an innovation on our system of jurisprudence; an assumption of power not warranted by the laws of the state; an invasion of the right given to parties to have issues in fact decided by a jury; a measure unsupported by any precedent of our own; not contemplated in, or adapted to, the organization of the superior court; and wholly unnecessary, not to say an impediment, to the due and speedy administration of justice.

GOULD, J. gave no opinion, having been of counsel in the cause.

New trial to be granted.