LAFLIN and others *against* POMEROY.

The contract, which the law, *prima facie,* implies from an indorsement in blank of a negotiable promissory note, by a third person, for the better security of the holder, is, that the note is due and payable according to its tenor; that the maker shall be able to pay it, when it comes to maturity; and that it is collectible, by the use of due diligence.

Therefore, such a note, so indorsed, is admissible, without any additional proof, under a count averring, that the defendant endorsed the note, and thereby promised the plaintiff, that it was good and collectible, and should be good and with due diligence collectible, when it should fall due, and that the maker, when it should fall due and be payable, should be of sufficient ability to pay it.

Applications for new trials for verdicts against evidence, are addressed to the *discretion* of the court, which is to be so exercised as to subserve the substantial ends of justice.

Therefore, if it does not clearly appear, that the finding of the jury is against the weight of evidence; or that it is necessary to the justice of the cause, that there should be a new trial; or that the result would, or ought to be, different; the court will not disturb the verdict.

But where the verdict is manifestly and palpably against the weight of evidence, the facts are to be submitted to another jury, that they may be investigated and considered with greater deliberation and attention, in order to correct any mistake that may have intervened.

Where all the evidence material to the point in controversy, was derived from the testimony of one witness, accompanied with a letter to the plaintiff; and this person appeared to be a reluctant witness for the plaintiff; and the jury, having had the advantages resulting from the appearance and demeanor of this witness, on his examination, cross-examination and re-examination, and having had an opportunity to judge of his intelligence, and of the strength and correctness of his memory, gave a verdict for the plaintiff, which was in conformity with the probable and declared object of the plaintiff, with the manifest understanding of the defendant, with the manner in which the subject was treated by him, with the good faith of the agent in the transaction, who was the witness referred to, and, in the opinion of the court, with the weight of evidence in the cause; it was held, that a new trial ought not to be granted.

THIS was an action of *assumpsit* against the defendant as a party liable on a promissory note. There were six counts in the declaration.

In the first, the plaintiffs declared, That the defendant, in and by a certain writing or note, under his hand, by him well executed, dated the 1st day of *November,* 1833, promised the plaintiffs, to pay to them, or order, for value received, the sum of 374 dollars, 50 cents, at the *Fulton Bank* in *New-York,* six months after date.

In the second count, it was alleged, that the note was executed, by the defendant, jointly and severally with one *Alfred Davis.*

The third, fifth and sixth were special counts, which it is not now necessary to state.

The fourth count was as follows: "That on the 1st day of *November,* 1833, one *Alfred Davis* made, executed and delivered to the plaintiffs his promissory note, of that date, wherein he promised to pay the plaintiffs, or order, at the *Fulton Bank, New-York,* for value received, 374 dollars, 50 cents, six months after date; and the plaintiffs thereupon became and were the owners of said last-mentioned note; and afterwards, on the same day, the defendant, in consideration of two dollars paid him, by the plaintiffs, indorsed the said last-mentioned note, in his own proper hand-writing, and thereby then and there promised the plaintiffs, that the said note was then good and collectible, and that the same should be good, and with due diligence collectible, when the same should fall due; and that the said *Alfred Davis,* the maker thereof, then was, and when said note should fall due and payable, should be, of sufficient ability to pay the same; as by said writing or note, ready in court to be shown, appears. And now the plaintiffs say, that afterwards, when said note became due and payable, *viz.* on the 3rd day of *May,* 1834, the said note, then due and unpaid, was presented at the *Fulton Bank* in the city of *New-York,* where the same was payable, for payment thereof, and payment of the same was then and there demanded of the said *Davis;* but the said *Davis* then did neglect, and ever since hath utterly neglected and refused, to pay the same; of all which the defendant, afterwards, on the 5th day of *May,* 1834, at said *Meriden,* had notice. And the plaintiffs say, that when said note fell due and payable, *viz.* on said 3rd day of *May,* 1834, the said *Alfred Davis* was, and ever since hath been, utterly insolvent and unable to pay said note, or any part of the same; nor was the said note, or any part of the same, collectible of the said *Davis,* when the same fell due; nor hath the same, or any part thereof, ever been paid, but the same is now due to the plaintiffs." A breach of the defendant's promise was then alleged.

The cause was tried at *New-Haven, October* term, 1835 before *Williams,* Ch. J.

The plaintiffs offered in evidence a note, with an indorsement thereon, in these words : "Dolls. 374.50. *New-York, November* 1st, 1833. Six months after date, I promise to pay to the order of *W. & W. & C. Laflin,* at the *Fulton Bank, New-York,* three hundred and seventy-four dollars, fifty cents, for value received. [Signed.] *Alfred Davis.*" Indorsed "*Noah Pomeroy.*" The making and indorsement of the note ; the due presentment of it, at the *Fulton Bank,* for payment ; the non-payment of it by *Davis ;* the immediate protest and notice to the defendant ; and the entire insolvency of *Davis,* when the note became payable and ever since—were proved and admitted. The plaintiffs thereupon claimed, that they were entitled to recover without further proof, upon the two first counts in the declaration. The defendant objected to the evidence, as not tending to prove these counts ; and the court excluded it, so far as it was offered for this purpose.

The plaintiffs then introduced the same evidence in support of the other counts, in connexion with the additional testimony of *Francis A. Gale,* who testified, that he received a letter from the plaintiffs, of which the following is a transcript : "*New-York, November* 2, 1833. *F. A. Gale,* Esq.—Dear Sir, Enclosed is *Alfred Davis'* of *Middletown* note for $374\frac{50}{100}$ dolls. which you will have the goodness to get Mr. *Noah Pomeroy* to indorse. He agreed to indorse it for $\frac{1}{2}$ *per cent.* Mr. *Davis* being a stranger to us, we preferred giving that rather than to have it without, or even 1 *per cent.,* in case he will not do it for less. We like to have our notes doubly fortified, when we can. The note being payable to us, it will be necessary to say, on the back of the note, above his signature, that he guarantees the payment of the within. You will have the goodness to pay the guaranty, and we will pay you, with your trouble. You will return the note as early next week as convenient. By so doing, you will very much oblige your friends, [signed] *W. & W. & C. Laflin.*" Soon after the date of this note, *Gale* received it at *Meriden,* where he lived, and where the defendant resides. The next day, he went to the defendant and told him his business, but did not show him the plaintiffs' letter. The defendant wanted to see the note ; and the witness showed it to him. The defendant said, it was not such a note as he had agreed to indorse : that note was to be a smaller one, for sixty or ninety days. He also said, this note is payable to the *Laflins,* and they ought to have indorsed it. He

said, he believed the note to be good. He farther said, the *New-Haven,* July, 1836.

*Laflins* would have to indorse it, before they could get the

money on it. He would indorse it for two dollars. This sum

the witness paid him. He then went into the house and in-

dorsed the note in blank ; and the witness returned it to *New-York.*

Upon being questioned, by the counsel for the plaintiffs, the witness said, that as the defendant made objections to the note, he did not ask him to guaranty the note ; the witness then supposing it would be the same thing or have the same effect. When asked whether he made any objections, except to the amount of the note and the time it had to run, the witness said, he claimed that it was not such an one as he had agreed to indorse. He did not say it should have been made payable to him, but said they would have to indorse it, to get the money.

The witness also testified, that the *Laflins* were men of good property, and could get any sum of money they wanted, without the defendant's security ; and that *Davis* lived in *Middletown*, in this state, near the defendant.

Upon further enquiry by the plaintiffs, whether the defendant objected, except as to the amount and time of the note, the witness said, that the defendant said it differed from what was talked of, because it was for a larger sum and a longer time, and said this note is payable to the *Laflins*, and they ought to have indorsed it. The witness supposed the defendant took the two dollars for indorsing. He said he would do it for that sum. The witness told him, that was more than half a *per cent.* The witness wrote to the plaintiffs, that he had been over, and that the defendant had indorsed the note ; but that nothing was said about his guaranteeing the note, as he made objections.

On being again asked, whether he made any objections, except as to the amount and time of the note, the witness said, he objected to the sum of the note, and the length of time it had to run, and said it must be indorsed by the *Laflins*, before they could get the money on it.

Upon his cross-examination, the witness said, that in the course of the conversation he suggested to the defendant, that the *Laflins* would want to grind the note, and his name would make it go easier : that this was his own suggestion. He objected ; and the witness thought he would get him on the note

New-Haven,
July, 1836.

Laflin
v.
Pomeroy.

in some way, and supposed he would be holden by his indorsement. When the witness went to *New-York*, the plaintiff paid him the two dollars.

This was all the material testimony as to the indorsement of the note by the defendant.

To this evidence, the defendant objected, as not supporting any count in the declaration ; and because no parol proof was admissible to vary the effect of a blank indorsement. The court over-ruled this objection, and admitted the evidence, as applicable to the fourth count. In summing up, the court left to the jury the question of fact, whether the defendant indorsed this note as the surety of *Davis*, the maker, or as surety of *Davis* and the *Laflins*.

The jury returned a verdict for the plaintiffs ; which the court accepted. The defendant thereupon moved for a new trial, on the ground that the evidence was improperly admitted, and that the verdict was against the evidence in the cause.

*Ingersoll* and *Hitchcock*, in support of the motion, contended, 1. That the note produced in evidence, with the proof of indorsement, protest, notice and insolvency of *Davis*, without further testimony, did not entitle the plaintiffs to recover upon any count of the declaration. The cases in *Massachusetts* and *New-York*, which would allow a recovery on the two first counts, are not law in *Connecticut*. As to the other counts, the third, fifth and sixth are on special contracts of guaranty. Now, whatever may be the legal effect of an indorsement, by a third person, of a negotiable note, which the payee holds, without ever having given his own indorsement, still, in this case, without parol evidence, the defendant is merely a second indorser. *Herrick* v. *Carman*, 12 *Johns. Rep.* 159. *Tillman* v. *Wheeler*, 17 *Johns. Rep.* 326.

2. That the testimony of *Gale* does not establish an absolute special contract to guaranty the note to the plaintiffs. Therefore, the third, fifth and sixth counts are not sustained. In the first place, the agent never applied for such a guaranty. Secondly, the defendant's objections show, that he did not act in pursuance of any former agreement to guaranty. Thirdly, the agent wrote to the plaintiffs, that the defendant made objections, and he did not ask a guaranty, but had got his in-

dorsement. Fourthly, the plaintiffs *used* the defendant's name as an indorsement, and not as a guaranty.

New-Haven,
July, 1836.

Laflin
*v.*
Pomeroy.

3. That the testimony of *Gale* does not prove, that the defendant agreed to give the plaintiffs a blank warranty of the note. Hence, the fourth count is not sustained. In the first place, the plaintiffs *expected* no blank indorsement ; for they wrote for a special written guaranty. Secondly, the agent told the defendant, that the plaintiffs wanted to " grind the note," and " his name would make it go easier." He thus asked for a second indorsement. Thirdly, the defendant had enquired, and found that the plaintiffs were responsible, and said they must *first indorse* the note, as it was payable to them. Fourthly, the defendant, in connexion with *Gale's* declarations and his own, and adding, they cannot get the money without their own indorsement first, indorsed as a mere second indorser to the plaintiffs. Fifthly, the agent knew the defendant's intentions, and *assented* to them; and this closed the contract.

*Baldwin* and *Kimberly*, contra, insisted, That the evidence was relevant and admissible, in support of the fourth count; and was sufficient to sustain the verdict; or, at any rate, the verdict was not one against the evidence. They claimed no right to recover upon any count, except the fourth.

HUNTINGTON, J. We have, at the present term, in the case of *Perkins* v. *Catlin*, ante, *p.* 213., disposed of several of the questions presented by this record. At the trial, the note, when offered in evidence, appeared to have been indorsed by the plaintiffs, and *C. Burrall*, cashr. ; but these indorsements had been erased, and it was proved, that the defendant indorsed the note, in blank, *previous* to the indorsements of the plaintiffs and *Burrall*. Under these circumstances, the indorsement was, *prima facie*, a contract on the part of the defendant, that the note was due and payable according to its tenor, that *Davis* would be of ability to pay it when it came to maturity, and that it was collectible, by the use of due diligence. It was, therefore, admissible, without any additional proof, under the fourth count in the declaration, which avers, that the defendant indorsed the note, and thereby promised the plaintiffs, that it was good and collectible, and should be good, and with due

diligence collectible, when it should fall due, and that *Davis*, when it should fall due and be payable, should be of sufficient ability to pay it. Evidence was, however, offered of the circumstances under which the indorsement was made; and the cause was submitted to the jury, upon the question of fact, whether the defendant indorsed the note as the surety of *Davis*, or as the surety of *Davis* and the *Laflins*; and the jury returned a verdict for the plaintiffs. As to the manner in which the cause was left to them, the *defendant* surely cannot complain; for it was presented in the most favourable light for him which the facts would authorize. And no question remains open for our decision, but that which arises upon the sufficiency of the evidence to justify the verdict returned by the jury. The judge, in pursuance of the requirements of the statute, has made a statement of the evidence, and reported it to us; and we are called to decide whether the verdict is against the evidence in the cause, and are required, in the exercise of a sound discretion, to set it aside and grant a new trial.

It may be difficult to lay down any precise rule, by which courts, in all cases, are to be governed in applications for new trials for verdicts against evidence. They are, at common law, as well as by our own statute, addressed to our *discretion*, which is to be exercised so as to subserve the great end of all trials, a fair and impartial administration of justice. Each case, must, in a measure, stand on its own proper ground. While, on the one hand, courts will be careful not to interfere, arbitrarily, or in doubtful cases, with the appropriate province of the jury, on questions, which our constitution and laws have placed peculiarly under their jurisdiction, they will, on the other, exercise the power which the same authority has conferred on them, when the substantial ends of justice require it. *Fox* v. *Clifton* & al. 6 *Bing*. 754. S. C. 9 *Id*. 115. If, therefore, it does not clearly appear, that the finding of the jury is against the weight of evidence; or that it is necessary to the justice of the cause that there should be a new trial; or that the result would or ought to be different, the court will not disturb the verdict. *Deacle* v. *Hancock*, 13 *Price* 226. The power of the court to grant a new trial for a verdict against evidence, is not to be exercised, unless "in clear cases." *Bartholomew* v. *Clark*, 1 *Conn. Rep.* 472. "The verdict ought to be manifestly and palpably against the weight of evidence,

New-Haven,
Juiy, 1836.

Laflin
v.
Pomeroy.

to authorize *a venire facias de novo.* The granting of a new trial, merely because, in the opinion of the court, the verdict is rather against the weight of evidence, would reduce the trial by jury to an expensive and useless form, and take away the power vested in the jurors by the constitution." *Palmer* v. *Hyde,* 4 *Conn. Rep.* 426. *Eagle Bank* v. *Smith,* 5 *Id.* 71. *Johnson* v. *Scribner,* 6 *Id.* 185. In the last case, the court suggest the general rule, which governs them on this subject, and the reason on which it is founded. Where the verdict is manifestly and palpably against the weight of evidence, the facts ought to be submitted to another jury, that they may be investigated and considered with great deliberation and attention, in order to correct any mistake that may have intervened. Nothing is more preposterous than the idea, that the mistaken decision of one jury, a fallible tribunal, may not be corrected, by the re-examination and determination of another. In *Nichols* v. *Alsop,* 6 *Conn. Rep.* 480., a new trial was granted, because the verdict was against the justice of the cause and unsupported by evidence. In *Newell* v. *Wright,* 8 *Conn. Rep.* 519., we said, we feel no disposition to invade the province of the jury. They are constituted judges of the facts, in every case, with the aid of the court ; and this should be conceded to them. At the same time, it must be yielded, as the prerogative of the court, to grant new trials, in cases where the verdicts are not only against the weight of evidence, but against the evidence. The rule is settled, that a new trial may be granted, where the verdict is manifestly against the weight of evidence. *Kinne* v. *Kinne* & al. 9 *Conn. Rep.* 102. In *Talcott* v. *Wilcox, Id.* 134., we said, this is not a verdict so clearly against the weight of evidence, as to authorize us to grant a new trial : and in *Bacon* v. *Brewer, Id.* 334., that the jury decided against the evidence, is too decisive and palpable to permit a doubt to rest upon the mind. We have been thus particular in referring to the decisions of this court, on motions for a new trial for verdicts against evidence, that it may be seen, at a single glance, what is the general doctrine on the subject, in this state, and how admirably it is adapted to secure to parties, the privilege of trial by jury, and, at the same time, to protect them against the consequences of the gross mistakes, or the more reprehensible conduct, of jurors.

The same rule which governs us, is the rule in *Westmin-*

*ster-Hall,* and in the courts of our sister states.   In *Carstairs & al.* v. *Stein & al.* 4 *M. & S.* 192., a case of great consequence, in point of amount, and in some measure, of principle, Lord *Ellenborough,* in delivering the judgment of the court, says : The question before us is not whether the verdict given in this case, is such as we should ourselves have given, but whether, having been given by a jury to whom the whole cause was fully left in point of fact, and to whom the law upon the subject was distinctly stated, it ought, upon the grounds of argument suggested to us, to be now set aside, and a new trial granted.   All the questions which this case presented for their immediate consideration, were questions properly of fact, upon which, and the credit due to the several witnesses by whom the testimony was given, it was their peculiar province to decide.   And as to their deduction from the whole of the testimony, it ought, in general, to have effect given to it, *unless it appear clearly, that the jury have drawn a wrong conclusion.* The court, in granting new trials, does not interfere, *unless to remedy some manifest abuse, or to correct some manifest error in law or fact.*   There has been much contrary evidence given upon this subject, particularly as to the question of commission properly demandable for this description of trouble and expense ;  and in order to set aside the verdict, we ought clearly to see, that the jury have disbelieved what they ought to have believed on this head, or have believed what they ought to have disbelieved, and they, in consequence, have erroneously considered a larger amount of commission for trouble and expense as allowable in this case, than could fairly be allowed. This, upon the fullest consideration of the evidence, we cannot distinctly see to have been the case.   That there are circumstances in this case, strongly pregnant of suspicion, and which lead to a conclusion different from that which the jury have drawn, cannot be denied.   But this question, *i. e.,* whether colour or not, was a question for the consideration of the jury ; and to their consideration it was fully left, with a strong intimation of opinion on the part of the judge, that the transaction was colourable, and the commission, of course, usurious.   The jury have drawn a different conclusion, and which conclusion, upon the view they might entertain of the facts, they were at liberty to draw ;  and they having done so, for the reasons already stated, we do not feel ourselves, as a court of law, and

New-Haven
July, 1836.

Laflin
v.
Pomeroy.

acting according to the rules by which courts of law are usually governed in similar cases, at liberty to set aside that verdict, and grant a new trial.

In *Massachusetts* and *New-York*, a similar doctrine prevails. *Hammond* v. *Wadhams,* 5 *Mass. Rep.* 353. *Wait* v. *McNiel,* 7 *Id.* 261. 1 *Caines,* 24. note *a*. *Jackson* d. *Le Roy & al.* v. *Sternbergh, Id.* 162. *De Fonclear* v. *Shottenkirk,* 3 *Johns. Rep.* 170.

With these principles in view, we have attentively examined and considered the evidence reported to us, by the judge, and the result is, a perfect conviction that no rule of law, which ever has governed, or ought to govern courts, in cases of this description, will justify us in depriving the plaintiffs of their verdict. We think, so far from this being a case of a verdict against the evidence, or manifestly and palpably against the weight of evidence, that it is one in which they had sufficient evidence to justify their verdict, and have drawn from it a correct conclusion.

In consequence of the opinion expressed by the judge, that the note was inadmissible under the first and second counts of the declaration, the plaintiffs introduced a witness, whose testimony, accompanied with a letter of the plaintiffs, was all the testimony material in the cause, relating to the indorsement of the defendant. It is apparent from the motion, that this person was a *reluctant* witness for the plaintiffs. The course of his examination, cross-examination and re examination, on the subject of objections made by the defendant to indorsing the note, and the manner in which he related the facts connected with that part of the case, evince, that, however upright his intention, he had no strong sympathy for the plaintiffs, nor felt any peculiar desire that they should obtain a verdict. Besides, the case was one, depending, as it did, on the testimony of a single witness, in which the advantages to be derived from the appearance and demeanour of the witness, the opportunity to judge of his intelligence and of the strength and correctness of his memory, were enjoyed, by the jury, but are lost to us. Sir *W. Blackstone*, in his *Commentaries, vol. 3. p.* 347., observes, by this [*viva voce*] method of examination, and this only, the persons who are to decide upon the evidence, have an opportunity of observing the age, education, understanding, behaviour and inclination of the witness: in which points all per-

sons must appear alike, when their depositions are reduced to writing, and read to the judge, in the absence of those who made them. And yet as much may be frequently collected from the manner in which the evidence is delivered, as from the matter of it.

We have not, however, been governed, in the result to which we have come, by any considerations of this sort. Our attention has been directed to the *substance* of the testimony, as detailed in the motion; and we find much in it to warrant the deduction made by the jury, and to justify us in giving effect to the conclusion they have drawn from it.

It is to be recollected, the single point to which the testimony was directed, was, in the language of the instruction, " whether the defendant indorsed the note as the surety of *Davis*, or as surety of *Davis* and the *Laflins ?*"

The jury, in drawing the inference, that he intended, by his indorsement, to give to the payees additional security for the eventual payment of the note, were probably influenced by some, or all, of the following considerations. The plaintiffs were men of good property, and stood in no need of the defendant's assistance, to enable them to obtain money. It is not pretended, they were under any necessity to procure the note to be negotiated ; or that they, in fact, ever negotiated it. If their condition had required them to raise money, by a discount of negotiable paper, it would hardly be supposed, they would seek to be accommodated through the indorsement of a person living in the interior of *Connecticut*, a stranger to all the money lenders in their neighbourhood ; and this too, when they were themselves in good credit, possessing abundant property, and every facility to obtain all the funds which they required. In view of these facts, the enquiry would very naturally arise, could the plaintiffs have had any other object in asking for the guaranty of the defendant, and paying him more than one half of one per cent. for it, than to secure the responsibility of *Davis ?* Their object, however, is not left as a matter of inference or conjecture. Their letter to *Gale* states it, in the most explicit terms. " Mr. *Davis* being a stranger to us, we preferred giving that," (one half *per cent.*, for indorsing,) " rather than to have it without, or even one *per cent.*, in case he will not do it for less. We like to have our notes doubly fortified, when we can. The note being payable to us,

it will be necessary to say on the back of the note, above his signature, that he guarantees the payment of the within. You will have the goodness to pay the guaranty," &c.

New-Haven,
July, 1836.

Laflin
v.
Pomeroy.

The note was sent to obtain the defendant's indorsement, because he had previously agreed to indorse the note of *Davis* to be delivered to the *Laflins ; Davis*, at this time, living in *Middletown*, near the defendant. It was impossible the defendant should have supposed the note was transmitted to *Gale*, to procure his indorsement on the *plaintiffs'* note, or as *second indorser* on *Davis'* note. He knew he had agreed to indorse a note of some description, which should be given to the plaintiffs, by *Davis*, and as security or surety for *Davis*. And he was not ignorant of the fact, that the plaintiffs had sent this note to be indorsed by him, in pursuance of that agreement.

This is rendered very obvious from several parts of the evidence reported to us. When *Gale* presented the note to him, he "told him his business." And what was it? The letter of instructions, which he had received the day preceding, furnishes the answer. It was to procure a guaranty of the note of *Davis*. And although the letter was not shown to the defendant, nor was he asked, in terms, to guarantee it ; yet it is clear, *Gale* must have stated to him for what purpose he had called upon him ; and if we may presume, that he asked as a faithful agent, (which we ought to do,) he doubtless was understood, by the jury, to have testified, that he made known to the defendant the business for which he had sought an interview with him, *viz.*, that he, (*Gale*,) had received from the plaintiffs a note signed by *Davis*, and at their request, presented it to him for his indorsement, in pursuance of a previous agreement to that effect, which he had made. It was a natural inference for the jury to deduce, that the defendant perfectly understood why he was solicited to indorse the note, and the object for which it was to be indorsed. The reason was, he had previously consented to become surety for *Davis ;* and the object was, to enable the plaintiffs to avail themselves of that suretyship, to ensure the final payment of the note to themselves.

This view of the case derives strong confirmation from the manner in which the subject was treated by the defendant. Does he deny the agreement to indorse ? So far from this, he expressly admits it, but insists, that the note presented to him

differs from the one he had stipulated to indorse, in three particulars. It was for a larger sum, for a longer time, and was made payable to the plaintiffs. What is the only rational deduction to be made from this language? It is this: I have heretofore agreed to indorse a note for Mr. *Davis ;* but it was not to be made payable to the *Laflins ;* it was to be drawn payable to myself, and for a smaller sum, and for a shorter period of time than the one you have presented. I do not consider myself under any obligation to indorse this note, by reason of any previous agreement, as it differs essentially from the arrangement which was originally made. However, although the plaintiffs have not indorsed it, as they ought to have done, it being payable to them, still, the note is good ; the plaintiffs must indorse it before they can procure it to be discounted ; and if they will pay me two dollars, to obtain the benefit of my name, as surety for *Davis,* I will indorse it. He does not suggest, that the plaintiffs had agreed to indorse the note, nor intimate that he was to become *their* surety. The reverse of this is the fact. He complains that the note is made payable to them, and in this particular, a violation of the original agreement. He is acquainted with the pecuniary circumstances of *Davis,* knows his note to be good, and is willing to become his surety for an additional sum, and an extended term of credit, if the plaintiffs will pay him a suitable premium for the responsibility he assumes for his neighbour, whom he considers abundantly able to meet all his engagements. What other inference could an intelligent jury have drawn from this transaction, than the one which their verdict establishes? How could they have found the issue otherwise than they did find it, without presuming *Gale* to have been a dishonest agent, to have concealed from the defendant facts which ought to have been communicated to him, and to have perverted the truth, when he testified, that he did not ask the defendant to guarantee the note, *because he supposed his indorsement in blank,* " *would be the same thing or have the same effect :*"—without supposing the defendant to be ignorant of his own meaning and intention, to have acted in opposition to his expressed views, and to have meditated a fraud upon the plaintiffs, by receiving money of them for an indorsement, which they supposed would guarantee *to them* the payment of the note, (they using due diligence to collect it of the maker,) when he intend-

ed to give credit to secure the responsibility of the plaintiffs, whenever they should indorse and negotiate the note;—and without presuming the plaintiffs were either lunatics or idiots? The jury made no such imputations upon the plaintiffs, the defendant, or the witness, as would have been implied in a verdict for the defendant. They would not have been justified in making them. They regarded the plaintiffs, as intelligent, business men; the defendant, as honest in his purpose; and the witness, as disinterested and credible; and the transaction, as proved by the testimony, an indorsement, by the defendant, of *Davis'* note, and as surety for him alone; and therefore, returned their verdict for the plaintiffs. In this, " we cannot say they have done wrong."

*New-Haven,* July, 1836.

Laflin *v.* Pomeroy.

We are aware it is urged, that it appears the defendant was not asked to guarantee the note; and it is hence inferred, he did not intend, by his indorsement, to make himself a guarantor. It is true, the word " guaranty" was not used; but if the construction we have given to the whole testimony be correct, he did, in effect, enter into that contract of guaranty, which the law, *prima facie*, implies from a blank indorsement. He intended so to contract, and so he was understood, by the plaintiffs' agent, to have contracted; for the latter testified, that he supposed what the defendant had done, " would be the same thing, or have the same effect," as a guaranty.

It is further urged, that the defendant's intention to become the surety of the *plaintiffs,* is inferable from his declaration, that " they would have to indorse the note before they could get the money upon it." It is not, perhaps, entirely certain what the defendant meant, by this expression: but it is certain, he indorsed it previous to the plaintiffs; that they had made no agreement to indorse it; and there is no evidence, that they intended to negotiate it, or that it ever has been discounted. Under these circumstances, to presume he intended to become liable as indorser, only in the event that the plaintiffs indorsed and negotiated the note, would be to establish a ground of presumption hitherto unknown to the law, and to substitute it for that which is said to be the ground of all presumptions, *viz.* the necessary or usual connexion between facts and circumstances.

It is also claimed, that the defendant was informed, by the plaintiffs' agent, that " the plaintiffs would want to grind the

note, and his name would make it go easier ;" and from this, the inference is drawn, that he was requested to indorse, to give credit to the *plaintiffs,* and enable them, more readily, to procure the paper to be discounted ; that his indorsement was made for that purpose, and he was thus constituted a second indorser. If the language used can be considered at all equivocal, the most natural and obvious interpretation of it, is one at variance with the one drawn from it, by the defendant. The note to be " ground" was the note of *Davis,* not of the plaintiffs. It would make *Davis'* note " go easier," if it was indorsed, by a responsible person, than if offered for discount, without the indorsement of any one. Besides, if the plaintiffs were anxious to raise money upon it, they might desire to accomplish that object, without becoming themselves responsible. Notes are often sold in market, and indorsed without recourse ; and had the plaintiffs wished to make sale of it, or as the witness said, " to grind it," without incurring responsibility, they might, with truth, say, the indorsement of the defendant " would make it go easier." In addition to this, it is to be observed, that the witness said this was his own suggestion. He, clearly, had no authority from the plaintiffs to make it ; nor did he state to the defendant that he had any such authority.

We do not deem it necessary to extend these remarks. There are other points of view in which the testimony reported to us, might be considered, which tend to confirm the opinion we entertain, that the verdict ought not to be disturbed. We forbear to notice them. We think the jury drew a correct conclusion from the facts before them ;—but even were this doubtful, the verdict is *not so* manifestly against the weight of evidence, that the cause ought to be sent to another jury. Consequently, we do not advise a new trial.

The other Judges concurred in this opinion.

*New trial not to be granted.*