Tilghman, C. J.
delivered the opinion of the court.
This is action of assault and battery, and false imprisonment, in which the defendant is also charged with a trespass, in forcibly seizing the plaintiff’s vessel, called “the Hiram” and converting it to his own use use. The material facts are, that the plaintiff, being on board the Hiram, taking oysters, in the bay of Delaware, off the mouth of Maurice river, opposite to the county of Cumberland in the state of New Jersey, was forcibly captured by the defendant and others, who took possession of the Hiram, having the plaintiff on board, and conducted her into a harbour in the said county of Cumberland, where, under certain proceedings, before two justices of the peace of the said county, by virtue of a law of that state, she was condemned, for a breach of an Act of Assembly, and converted by the defendant, under the condem nation.
*207 The defendant justified, under the law of New Jersey, and the judicial proceedings founded thereon. This gave rise to two questions of evidence, in which bills of exceptions were taken by the counsel for the plaintiff. 1. The defendant offered in evidence, a copy of the Act of Assembly in question, entitled, “an Act for the preservation of clams and oysters,” printed and published under the authority of the state, to which the plaintiff objected, because it was not authenticated according to the provisions of the Act of Congress, made on that subject; but the Court admitted the evidence.
It is unnecessary to take up much time on points which have been decided, and considered as settled. And such, I think, is this question. It was decided by this court, in Biddis v. James, 6 Binn. 321., that the copy of a private Act of Assembly, printed under the authority of the Commonwealth, was evidence, and it had been before decided, in the case of Thompson v. Musser, that the copy of a public Act of Virginia, printed under the authority of that state, was evidence. In the opinion delivered by me, in Biddis v. James, in which all the Judges concurred, it was said, that we should be for admitting the printed copies, authorised by the legislature of this or any other of the United States, whether the acts be public or private. In the United States v. Johns, in the Circuit Court of the United States, held at Philadelphia, before Judges Washington and Peters, (4 Dall. 412.) a copy of an Act of Assembly of Maryland, for incorporating “The Baltimore Insurance Company,” printed and published by authority of the state, was admitted in evidence, to prove the incorporation of the company. And in Young v. The Bank of Alexandria, 4 Cranch, 388, the question being, whether an Act of Assembly of Virginia, incorporating the Bank of Alexandria, printed by the public printer of the state, was evidence; and the only objection to the evidence being, that it was a private act, Chief Justice MaRshall said, that a majority of the court were strongly of opinion, that it was o public act; but that, even if it were not, yet, being printed by the public printer, by order of the legislature, it must be considered as sufficiently authenticated. lie declared, at the same time, that they were willing to hear an argument, if the counsel thought they could support the contrary opinion — but the counsel declined the argument. So that, although the point was not absolutely decided, it has all the authority of a decision. It is time, therefore, that this point should be at rest.
2. The record of condemnation of the Hiram, was next offered in evidence by the defendant, after having proved, by the oath of a witness, that it was the original record, and that the signatures of the parties were of their handwriting, and evidence having also been given, that the Justice’s Court had no seal. This evidence was also objected to by the plaintiff, and admitted by the Court.
*208 The courts of Pennsylvania have always supposed, that the mode of authenticating the acts of the legislatures of the several states, and their other records, and judicial proceedings, prescribed, by the Acts of Congress, did not exclude all other evidences — that records, authenticated according to the Acts of Congress, were evidence every where throughout the United States; but still, other evidence, good according to established principles, independently of the Acts of Congress, might be admitted. The cases before cited come up to this point, where acts of the legislature are in question — and I can perceive no reason, why the same rule should not hold, in other cases; because Congress had the same right to prescribe the mode of authenticating an act of the legislature, as any other record. Supposing, then, that the Act of Congress is not exclusive, what stronger evidence could be given, than was offered in this case ? The original record was produced, and sworn to — the handwriting of the parties, whose signatures were affixed was proved. — Evidence was given, also, that the court had no seal. I really do not see how it could have been proved in a more convincing manner. Indeed, it rather appears, that the Act of Congress, even if it were exclusive, did not provide any mode of authenticating a judicial proceeding of this kind. It directs, that the judicial proceedings of the courts of any state, shall be proved “ by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the Judge, Chief Justice, or presiding magistrate, as the case may be, that the said attestation is in due form.'” Now, the proceedings under the law of New Jersey, might have been carried on before any two justices of the peace of the county, where the seizure was made. I know not whether these justices have a clerk. If they have not, it would be impossible to comply with the requisitions of the Act of Congress, and it would, therefore, be a case omitted. Be that as it may, under the law,' as the courts of this state have held it, the evidence was properly admitted, because good, independently of the Act of Congress.
Besides these two points of evidence, three exceptions were taken to the charge of the court — 1. That the jury was misdirected, as to the construction of the diet of Assembly of New Jersey. 2. That the said Act of Assembly was unconstitutional and void,. and so the jury ought to have been directed. 3. That the jury were misdirected, as to the right of property in oysters lying in the bay of Delaware. Some of these points are of very great magnitude, indeed, but I do not consider it as the duty of this court to decide them. No w'rit of error lies from the courts of New Jersey to this court. The defendant stands upon a judicial proceeding of another state, to which, by the Constitution of the United Slates, (art. 4. sect. 1.) we are bound to give full faith and credit; we have no right, then, to decide, whether the Court of Justices misconstrued their own Act of Assembly, or whether it *209 was constitutional or not. The cause was decided, and if the de» 'cisión was complained of, it should have been carried before a higher tribunal, according to the law of that state. I must observe, moreover, that the cause being brought before us, on exceptions to the charge of the judge of the District Court, we must take that charge as we have it on the record. Now, I find it expressly asserted in the charge, “ that it was not denied, that Neto Jersey was competent to enact the lato of June, 1820; — the only question made, was, as to the construction of it.” It will not do, to concede a thing first, and deny it afterwards. An exception cannot properly be taken to the opinion of a judge, which was delivered according to the consent of the party. As to the right of property in the oysters, while lying in the Bay of Delaware, that seems to have been a misapprehension by the plaintiff in error, of what the judge really did say. He did not say, that the property was in the state of New Jersey. His words are these: — “ It appears satisfactorily, that causes of complaint existed^ some time, concerning the destruction of oysters, which are a valuable article of food bestowed upon us by Providence, and for the preservation of which, laws are usually made by states. Although, perhaps, they may not have a right of absolute property in these articles, they do, and may, nevertheless, pass regulations for their preservation.” To the law, thus laid down, certainly no objection can be made. The right of preventing the destruction of fish and oysters, is a most salutary one, and has been exercised-by all states and nations. There was but one ground, on which the proceedings of the Court of Justices could have been controverted; and that is, that they had no jurisdiction of the case. But that ground is not tenable. Very laborious researches into ancient records have been made, to show that New Jersey was bounded on the west by the Bay of Delaware, and .therefore could have no jurisdiction below the low water mark. Such a doctrine would come with an ill grace from the courts of Pennsylvania, which is bounded by her charter on the east by the river Delaware, and yet has always claimed, and exercised, jurisdiction, at least to the middle of the river, and finally settled, by a solemn compact with New Jersey, the right of navigation and jurisdiction, as to the whole river. In the construction of the colonial charter, ancient claim and usage, are entitled to very great weight. Not long before the American revolution, Lord Rochford attempted to obtain a grant from the crown of England of some valuable islands in the Delaware, opposite and near to the Pennsylvania shore, under pretence that the charter to William Penn was bounded, on the east, by the river. The argument seemed plausible. But the proprietaries of Pennsylvania, having obtained a hearing before, the king in council, and proved that they had always exercised jurisdiction on the river — always claimed those islands, and granted some of them for a valuable'eonsideration, which had been improved at great ex-
ex *210 pense by the purchasers, and were then very valuable, the claim of Lord Rockford was relinquished. The witnesses differ, as to the distance from the Jersey shore, of the locus in quo of the trespass complained of, in this action. But the weight of evidence was, that it was in a cove opposite to the mouth of Maurice river. I do not see, how this court can say, it was out of the jurisdiction of New Jersey. So far as the fact was material, the jury have passed on it. And if it was within the jurisdiction of New Jersey, it was either in the county of Cumberland or in no county at all. Cumberland county runs to the Bay, and then up the Bay. The legislature of New Jersey supposed, that at least some part of the water was included in the counties adjoining, and bounded by the Bay; because they have given jurisdiction to the justices of the county in which the seizure should be made, and these seizures, from their nature, must generally be made while the boats are fishing in the Bay, below the low water mark. It is' enough, however, that it does not appear on this record,, that the seizure was out of the county of Cumberland; and the Court of Justices have expressly affirmed that it was within it. Upon the whole, I perceive no error, and am therefore of opinion that the judgment should be affirmed.
Judgment affirmed.